GULF REFINING CO. *v.* STANFORD *et al.*

[30 So. (2d) 516. No. 36364.]

(In Banc. May 12, 1947. Suggestion of Error Overruled Nov. 10, 1947.)

Wilbourn, Miller & Wilbourn, of Meridian, Welch, Cooper & Welch, of Laurel, Irwin W. Coleman, C. C. Richmond and Green & Green, all of Jackson, and John E. Green, Jr., of Houston, Tex., for appellant.

610

**W. E. Morse,** of Jackson, and **Beard & Pack** and **Ray M. Walker,** all of Laurel, for appellees, W. J. Dantzler et al.

Wells, Wells, Newman & Thomas, of Jackson, for appellees, G. G. Stanford and George F. Norris.

614

616

Argued orally by **Garner Green** and **R. E. Wilbourn,** for appellant, and by **W. R. Newman, Jr.,** and **Sam V. Pack,** for appellees.

**Sydney Smith, C. J.,** delivered the opinion of the court.

In October 1932 W. J. Dantzler conveyed to Nelson Simmons the N½ of NW¼ of Section 1, Township 1, Range 13, with a reservation therein that "in the event of any minerals, oil or gas being found in the bounds of the land we are to share the profits equally." Dantzler afterwards conveyed or assigned a one half interest in this reservation to G. G. Stanford. On October 21, 1937, Simmons executed the usual mineral lease to the appellant, authorizing it to explore for, bring to the surface, and utilize any oil that might be found in the land, for which privilege it agreed to deliver to Simmons one-eighth part of the oil produced by it from the land. It succeeded in producing oil from the land at an expense of something over $60,000 and had in its hands unpaid royalties due under the lease amounting to something over $3,600. This it paid into the registry of the Court below under a bill of interpleader, to which a number of persons were defendants who are said to claim a interest therein, prayed that they be cited to appear and assert their claims, if any, to this money and that the appellant be relieved from further responsibility there as to.

Dantzler having become non compos mentis, his guardian, McCormick, Stanford, and other defendants, filed cross-bills against the appellant in which they claimed that by the reservation in this deed, Dantzler reserved to himself a half interest in the oil in the land in place, and asserted a right in Dantzler and Stanford to the value of one-half of the oil produced by the appellant and prayed for an

accounting therefor. Demurrers by the appellant to these cross-bills were overruled, the Court thereby holding that the reservation in Dantzler's deed to Simmons was of a one-half interest in the oil in place. The Gulf Refining Company, by permission of the Court below, brought the case to this Court.

This State is a member of that group of states which hold that minerals in place may be owned separately from the ownership of the soil in which they are embedded. Reservations somewhat like the one here under consideration have been considered in decisions by the courts of some of the states belonging to this group, but the conflict and confusion therein is such that little help will be gained by resorting thereto; so we will proceed at once to construe this contract as we would any other submitted to us for that purpose.

"The word 'profit' is elastic, ambiguous and often properly used in more than one sense." 50 C. J. 643. Its meaning in a written instrument is governed by the intention of the parties appearing therein and any accurate definition of it must always include the element of gain. When this deed was executed it was not known whether there was any oil in this land; its presence therein being thereafter discovered. While remaining in the land oil is of no use to any one and no profit or gain can be derived therefrom other than its sale in place, except in so far as the value of the land would be increased thereby. It is clearly not the intention of the parties to this deed that the grantor therein should share in any increased value of the land and the sale of oil in place is unusual, and, if made, must be for a purely speculative price. The intention of the parties to this deed, therefore, must have been to share equally in the gain from or use of the oil after it has been brought to the surface. The finding of the oil in land and bringing it to the surface is quite expensive, the incurring of which—ex vi termini—is included here in the word profits. The reservation does not provide how this expense is to be met, but it is com-

mon knowledge that the landowner does not, and usually could not, himself provide the money therefor, the usual and almost universal method for finding oil and bringing it to the surface being for the landowner to authorize a person or corporation engaged in such business to find the oil and bring it to the surface, appropriating all that he produces thereby to himself except an agreed portion thereof reserved by an to be delivered, or its value paid, to the landowner and usually designated as a royalty. This is exactly what occurred here and was therefore within the contemplation of the reservation in the deed and since the appellees do not challenge the amount of the royalty here involved, they have no complaint thereat and Dantzler and Stanford are entitled only to receive one-fourth each thereof.

The appellees invoke, and rest their case on, that line of decisions based on Lord Coke's oft quoted dictum in Coke on Lyttleton, Book 2, 4b, holding that a grant in terms of the "profits" of land will pass the land itself. But we have no such simple case here, but one wherein a grantor reserved from or lifted out of his grant an element of the property granted; thereby creating a new right in himself out of the subject of the grant, which reservation must be "construed most strongly against the grantor and in favor of the grantee," 26 C. J. S., Deeds, Sec. 140b, even without which it is clear that the word "profits" was not here used as the equivalent of the property from which the profits were to come. Cf. Armstrong v. Bell, 199 Miss. 29, 24 So. (2d) 10; Hattiesburg Grocery Co. v. Robertson, 126 Miss. 34, 88 So. 4, 25 A. L. R. 748; State v. Gulf, M. & N. R. Co., 138 Miss. 70, 104 So. 689.

Reversed and remanded.

**Roberds, J.**, delivered a dissenting opinion.

In my opinion the clause "But in event of any mineral, oil or gas being found in the bounds of the land we are to share the profits equally" excepted from the deed and

retained in the grantor one-half of the minerals, oil and gas in place. My reasons are these:

1. As stated in the majority opinion, it is settled in Mississippi that the surface and the minerals thereunder, including oil and gas, may be separately and concurrently owned. Moss v. Jourdan, 129 Miss. 598, 92 So. 689; Stern v. Great Southern Land Co., 148 Miss. 649, 114 So. 739; Stokely v. State ex rel. Knox, Attorney General, 149 Miss. 435, 115 So. 563; Liverpool & London & Globe Ins. Co. v. Delaney, 190 Miss. 404, 200 So. 440; Pace v. State, 191 Miss. 780, 4 So. (2d) 270; Wight v. Ingram-Day Lbr. Co., 195 Miss. 823, 17 So. (2d) 196; Koenig v. Calcote, 199 Miss. 435, 25 So. (2d) 763.

2. For a long time it has been settled in the law of real property that a conveyance of the profits of land is a conveyance of the land itself, "for what is the land but the profits thereof?" Coke, Lyttleton, 4(b) and (c). Hundreds of cases and texts might be cited to support that principle. I will refer to only a few of them.

In Weakland et al. v. Cunningham et al., 7 A. 148, 3 Sad., Pa., 519, the Court held that "The following reservation in a deed: 'Excepting the profits of one-half of all the stone coal, and of all other kinds of mineral, which may be discovered at any time hereafter,'—is a reservation of the corpus of all such coal and mineral in place."

Caldwell v. Fulton, 31 Pa. 475, 72 Am. Dec. 760, held that a conveyance to grantee of the right to dig and take coal to the extent the grantee "may think proper to do" was a conveyance of the entire ownership of the coal in place, explaining that minerals can be conveyed by "description of the thing itself as of land by metes and bounds, or by a known name . . . ," or "by a designation of its usufruct or of the dominion over it. Thus a grant of the rent issues and profits of the tract of land is uniformly held to be a grant of the land itself."

The Supreme Court of the United States, in Green v. Biddle, 8 Wheat. 1, 5 L. Ed. 547, 566, said, "A right to land essentially implies a right to the profits accruing

from it, since, without the latter, the former can be of no value. Thus, a devise of the profits of land, or even a grant of them, will pass a right to the land itself.'' To the same effect is Pollock v. Farmers' Loan & Trust Co. et al., 157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759, quoting, with approval, the language of Coke on this subject.

In Ball v. Hancock's Adm'r, 82 Ky. 107, the deed conveyed the right ''. . . to take the profits thereof to the use of said Marian Sophia and her heirs.'' The Kentucky Court said, ''This unlimited right to the profits . . . would amount to a grant of the land itself . . . a grant of rent issues and profits of a tract of land is a grant of the land itself . . .''

In Baker v. Scott, 62 Ill. 86, the testator provided that his daughter, at the age of 23, ''may come into possession of the full amount of rents and profits . . .'' to certain land. The court held this vested in the devisee a fee-simple title to the land.

In Toothman v. Courtney, 62 W. Va. 167, 58 S. E. 915, 918, the conveyance contained this provision, ''The party of the first part reserves all the oil rental, there are twelve wells drilled, and if any wells be drilled, after the twelve wells is drilled, the second party is to have the sixty-fourth part of the oil.'' The court held that the reservation or exception of all the rental of the land vested in the person excepting it, the beneficial interest in the land, equivalent ''to a reservation of the corpus thereof.''

In 4 Tiffany on Real Property, 3d Ed. 1939, Sec. 990, page 91, it is said, ''And a conveyance in terms of the profits of land will pass the land itself, 'for what is the land but the profits thereof' . . .''

In 1 Thompson on Real Property, Perm. Ed. 1939, Sec. 91, p. 115, it is said, ''An exception of one half of the profits of all coal and other minerals which may be found in the land is held to be an exception of the profits of all such coal and minerals in place.''

And, finally on this question, this Court, in Merrill Eng. Co. v. Capital National Bank, 192 Miss. 378, 5 So. (2d)

666, 670, quoting from the Arkansas Court (Arrington v. United Royalty Co., 188 Ark. 270, 65 S. W. (2d) 36, 90 A. L. R. 765, which, in turn quoted from Green v. Biddle, 8 Wheat, 1, 5 L. Ed. 547), used this expression: "We are clearly of the opinion that the grant of one-half of the royalties, rents and income from the oil is a grant of one-half of the oil in place." See Culley v. Rhodes, 124 Miss. 640, 87 So. 136.

It might be noted, in this connection, that the word "profits" is a broader term than rents or income; it includes rents and income; the use of that word embraces rents, income and issues growing out of land.

3. The case of McNeese v. Renner, 197 Miss. 203, 21 So. (2d) 7, sustains the conclusion expressed in this dissent. In that case the grantor conveyed certain lands and then provided that grantor "hereby reserves and retains an undivided one-fourth (¼) interest in and to all minerals, oil and gas that might be hereafter discovered under lands herein described." This Court held (1) that this provision reserved to the grantor a present undivided title, or right, to such minerals in place as might be in such lands, and (2) that it was not necessary to expressly retain a right of entry to utilize the property, that right being implied. The court further said, "The words 'that might hereafter be discovered' in these deeds neither add to nor detract from what the exceptions therein would have meant had they been omitted and the exceptions have been permitted to read as follows: 'The Company hereby reserves and retains an undivided one-fourth interest in all minerals, oil and gas on the land herein described,' " citing Moss v. Jourdan, 129 Miss. 598, 92 So. 689, 690, where the language of the reservation was "all minerals that may be on the above described land." Applying these cases to the case at bar the provision under consideration could read, "But we are to share the profits equally in all minerals, oil and gas under said land." It might be noted that the case at bar is stronger on behalf of the grantor than the McNeese case because

in the present case it is known oil exists under the land— it is now being produced; whereas in the McNeese case no oil had been discovered. The court was dealing with a right in the eventuality minerals, gas or oil might later be discovered.

4. It will be noted further the parties provided they would share "equally" in the profits from the minerals. That means their interests were to be equal and alike— "in an equal manner or degree; in equal share; with equal and impartial justice; alike; evenly." Webster's International Dictionary, p. 863. Now, they cannot share equally unless they own an equal share in place, with equal rights and powers. Here the grantee has made a lease on such terms as he desired. He has received the bonus and rents, yet the contention is the owner of the equal share is to receive only his part of the royalties. Now, profits and royalties are not synonymous terms. Royalties come into being only after oil has been discovered and brought to the surface. Profits include all income and benefits from the ownership of the minerals if known to exist and the right thereto if the existence be unknown. The construction announced in the majority opinion places one equal owner largely at the mercy of the other. The grantee has the sole right and power to make a lease, on such terms as he thinks to his best interest, fixing, at his pleasure, the amount of royalty the grantor is to receive. Conceiveably, the grantee might reduce the royalty to the grantor by increasing the bonus and rentals to himself. The grantor has no "profit" unless oil is actually discovered and brought to the surface, regardless how much money might be paid in the hope of such discovery. It is likely that as much money has been paid in Mississippi for rentals and bonuses as has been paid in royalties. The deed stipulates the parties are to "share the profits equally." That cannot be done where one party is largely at the mercy of the other.

While only oil is involved here, suppose there are other minerals, such as iron, ore, coal or zinc, yet the grantee

does not think well of exploring for them. Suppose the grantee determines he does not want to explore for minerals and refuses to contract for, or permit explorations, for that purpose. What could the grantor do? The grantor, under the deed, is to share all of these equally, yet he is helpless to realize any income from his property. The parties could hardly have intended that.

5. Some stress has been laid upon the construction to be given a reservation as distinguished from an exception, the contention being the clause under consideration is a reservation. In my opinion it may, with equal reason, be designated an exception. The entire clause is preceded by the word "but," which indicates that what follows is an exception to what preceded that word. "It has been said that the word indicates that what follows is an exception to that which has gone before . . ." 12 C. J. S., page 858. It is noted the same word was used in Moss v. Jourdan, supra. However, the discussion is largely academic. While in the long past considerable importance was attached to these distinctions, they are of little practical importance now. In Cook v. Farley, 195 Miss. 638, 15 So. (2d) 352, 356, this Court mentioned that fact, saying the distinction between an exception and a reservation "is of no practical importance since the property excepted or the estate reserved is never included in the grant," and that "the courts look to the intent of the parties and the nature of the legal interest sought to be created."

**Griffith, J.**, concurs in this dissent.