HASSIE HUNT TRUST, et al. v. PROCTOR, et al.

Oct. 13, 1952

No. 38469          3 Adv. S. 5          60 S. 2d 551

*Ralph B. Shank, R. L. Jones, W. E. Morse* and *Sam V. Pack,* for appellants.

*Hannah, Simrall & Aultman, Wright & Glazier, Welch & Welch, Brunini, Everett, Grantham & Quin,* for appellees.

HOLMES, J.

The appellees claim to be the owners of a valid and subsisting oil, gas and mineral lease covering 10 acres on the south side of the southeast quarter of the northeast quarter of Section 31, Township 1 North, Range 13 East, in Jasper County, Mississippi. The Hassie Hunt Trust was the undisputed owner of valid and subsisting oil, gas and mineral leases on the north 30 acres of the said 40-acre tract, and also asserted ownership superior to that of the appellees of the leasehold estate in the minerals in the aforesaid 10 acres of said 40-acre tract. The Hassie Hunt Trust, without the consent of the appellees and without a pooling agreement with the appellees, applied for and obtained from the State Oil and Gas Board a permit to drill a well on said 40-acre tract as a drilling unit and thereafter drilled a producing oil well on the north 30 acres of said unit, and thereafter produced therefrom such quantity of oil as the pipeline

companies would take and later such allowables as were fixed by the State Oil and Gas Board. The appellees demanded of the Hassie Hunt Trust one-fourth of the proceeds of the production, basing their demand upon their asserted ownership of the leasehold estate in the minerals in said 10 acres. Upon the refusal of the demand of the appellees, they brought this suit in the Chancery Court of the First Judicial District of Jasper County to enforce their demand, seeking to have confirmed in them the leasehold estate in the minerals in said south 10 acres, and to cancel the claims of Hassie Hunt Trust thereto, and to compel participation by them in the production to the extent of one-fourth of the proceeds of the production, and seeking an accounting.

Numerous parties were made defendants to the suit but their several interests are in the main determinable by the outcome of the contest between the appellees and the Hassie Hunt Trust over the leasehold estate in the minerals in said south 10 acres.

Hassie Hunt Trust answered, denying by general traverse the allegation in the bill of the appellees that they were the true and lawful owners of a good and valid, present and existing oil, gas and mineral lease on said 10 acres, and specifically attacking the validity of the title of the appellees upon the grounds that the lessor in the lease under which they claimed was without title because of the nature of the conveyance and upon the ground that the conveyance was void because of indefiniteness of the description therein, and further averring that appellees were not entitled to participate in the production because the well was not located on said south 10 acres but was located on said north 30 acres. Upon the conclusion of the hearing of the cause, the chancellor granted the relief sought in the original bill and Hassie Hunt Trust and others of kindred interests prosecute this appeal.

The material facts are not in dispute and are substantially as follows: W. J. Dantzler was, on July 15, 1933,

the undisputed owner of the 10-acre tract in question, and on that day conveyed it to Rufus McCormick by the following instrument:

"State of Mississippi

"County of Jasper

"For and in consideration of $180.00 (One Hundred Eighty Dollars), I sell, transfer and deliver to Rufus McCormick the following described land to-wit:

"10 acres on the South side of the SE¼ of the NE¼ of Section 31, Township 1, Range 13.

"If any oil or other mineral is found on the place we are to share the profits equally.

"This the 15th day of July, 1933.

"W. J. DANTZLER.

"State of Mississippi

"County of Jasper

"Sworn to and subscribed before me this the 15th day of July, 1933.

"Grace Abney.

"Filed for record at 9 a. m. on the 10th day of May, 1941. Recorded on the 10th day of May, 1941.

"T. V. Simmons, Clerk

"By................................................, D. C."

As appears from the face of the instrument, it was sworn to but not acknowledged in the form required for recordation. Nevertheless it appears to have been filed for record on May 10, 1941, and spread at large upon the records on the same day. On June 5, 1943, Rufus McCormick granted to W. C. Proctor an oil, gas and mineral lease covering the said 10-acre tract and also 9½ acres on the north side of the Northwest quarter of the Southwest quarter of Section 32 in the same Township and Range. The said 9½ acres located in said Section 32 are not here involved. The lease was what is known as an "unless" lease, providing that if drilling were not begun on said land or on acreage pooled therewith within one year, the lease would terminate unless on or before

the anniversary date of the lease the lessee should pay the delay rental therein provided in the amount of $19.50.

In December, 1943, and January, 1944, the north 30 acres of the 40-acre tract in question were leased and these leases were assigned to Hassie Hunt Trust and the validity of these leases is not questioned. All of the land is located in the Heidelberg field where the first oil well was brought in in the early part of 1944. In 1944, W. J. Dantzler was declared *non compos mentis,* and on March 3, 1944, Hassie Hunt Trust procured from the guardian of Dantzler a purported lease on said 10-acre tract, but because of claimed defects in the guardianship proceedings, other purported leases were obtained by Hassie Hunt Trust from the guardian on the same tract. These leases are dated respectively July 19, 1944, August 10, 1944, August ........, 1944, and September ........, 1944. At the time these leases were obtained, Hassie Hunt Trust had actual knowledge of the aforesaid conveyance from W. J. Dantzler to Rufus McCormick, but claimed, on the opinion of its attorneys, that it was void because of indefiniteness of the description, and further that in any event it conveyed only an undivided one-half interest in the minerals. On May 4, 1944, the State Oil and Gas Board adopted spacing regulations for the Heidelberg field prohibiting the drilling of an oil well on any unit of less than 40 acres. In effect then also were regulations of the Petroleum Administration for War restricting materials and drilling equipment to one well for each 40-acre unit. On August 10, 1944, Hassie Hunt Trust applied to the State Oil and Gas Board for a permit to drill a well on said 40-acre tract as a unit and likewise for a permit from the Petroleum Administration for War with respect to the same unit, which permits were granted. In making these applications, the Hassie Hunt Trust represented that it was the holder of the leasehold estate in the minerals in the entire 40-acre tract. Hassie Hunt Trust then drilled a well on the north 30 acres of said 40-acre tract and completed it as a producing oil

well in October, 1944. In the meantime, Proctor's lease-hold estate in the said 10-acre tract had been assigned to the appellees and negotiations were had between Proc-tor, acting for the appellee, and Hassie Hunt Trust, at-tempting to reach an adjustment of their conflicting title claims to the 10-acre tract. These negotiations were unsuccessful however, since the Proctors insisted that they were the owners of a 10-acre leasehold interest in the 40-acre unit and Hassie Hunt Trust was unwilling to concede them in any event more than a five-acre interest therein. The record is not clear as to when Proctor, acting for the appellees, became aware of the drilling of the well by Hassie Hunt Trust, but after the well was known to be a producing well, application was made on behalf of the Proctor interests to the State Oil and Gas Board and to the Petroleum Administration for War for a permit to drill a well on the said south 10-acre tract. The applications were refused upon the ground that a permit had been granted to Hassie Hunt Trust to drill one well on the entire 40-acre tract as a unit.

On March 18, 1948, attorneys for the Proctor inter-ests demanded of the Hassie Hunt Trust by letter that it release its asserted leases on the 10-acre tract and this demand was refused. On February 23, 1949, the first original bill in this cause was filed by the appellees, claiming that their asserted leasehold interest in the 10-acre tract should be treated as unitized with the remainder of the 40-acre unit and that they be accorded the right to participate in the proceeds of the produc-tion to the extent of one-fourth thereof. At the time of the filing of the first original bill, the proceeds from the production had paid the expenses of drilling and operation. During the pendency of this suit, royalty owners claiming through Rufus McCormick recognized the validity and existence of the lease of the Proctor interest in the 10-acre tract and filed an independent suit in the Chancery Court of the First Judicial District of Jasper County against Hassie Hunt Trust and others

of kindred interests seeking to enforce their royalty claims. These two suits were consolidated and a settlement with the royalty claimants was subsequently made. During the pendency of the litigation, the Proctor interests filed a petition with the State Oil and Gas Board seeking to have the Board adjudge their interests to be unitized with the north 30 acres and to adjudge them to be entitled to pro-rata participation in the production. The Board rendered no decision on this petition but continued the same until all questions of title are finally adjudicated by the Supreme Court, and the petitioners appealed from this action of the Board, and both causes are consolidated here.

It is first contended by the appellants that the decree of the trial court should be reversed for the reason that the appellees have failed to prove their title. On the trial of the cause in the court below, the appellants attacked the title of appellees upon the ground, first, that the conveyance from Dantzler to Rufus McCormick was void for indefiniteness of description, and, second, that it conveyed only an undivided one-half interest in the minerals. The chancellor held, and we think rightly so, **(Hn 1)** that the description in the conveyance was not so indefinite as to render the conveyance void. **(Hn 2)** The contention of the appellants that the instrument conveyed only an undivided one-half interest in the minerals has now been answered by the case of Gulf Refining Company v. Stanford, et al., 202 Miss. 602, 30 So. 2d 516, wherein it was held that a like reservation in a conveyance reserved to the grantor only a royalty interest. Appellants have themselves manifestly become convinced that the foregoing grounds of attack upon the instrument in question cannot be sustained since on this appeal they have wholly abandoned these grounds of attack and **(Hn 3)** contend now that the title of the appellees was not established because the lease under which they claim is an "unless" lease, providing that if drilling operations are not begun in one

year the lease shall terminate unless delay rentals in the amount of $19.50 are paid annually, and that the record discloses no proof of either drilling operations or the payment of delay rentals prior to the expiration of one year from the date of the lease under which appellees claim. We think this contention of the appellants is untenable under the pleadings. (Hn 4) The amended bill of complaint alleged that the complainants, ''are the sole, true, legal, and equitable owners of a good and valid present and existing oil, gas and mineral lease covering all of the oil, gas, and other minerals, etc.,'' on the 10 acres and deraigned title, setting forth among other conveyances, the lease under which they claimed. The allegation that appellees were the owners of a present and existing lease was sufficient to embrace the performance by the appellees of those conditions required to maintain the lease in force. Section 1291 of the Code of 1942 provides the following: ''The defendant shall answer fully all the allegations of the bill without being specifically interrogated. All matters of fact averred in the bill and not denied in the answer otherwise than by the general traverse may be taken at the hearing as admitted.'' There was no specific denial of this allegation in the bill. It was denied only by general traverse. The nature of the denial was as follows: ''These defendants deny that the complainants (naming them) are the sole, true, legal, and equitable owners of a good and valid, present and existing oil, gas and mineral lease covering all or any of the oil, gas and other minerals in, on, and under the 10 acres of land, etc.'' The general traverse was not sufficient to put the appellees to proof of the fact that drilling operations had been timely begun or that the delay rental provided for in the lease had been timely paid. Griffith's Chancery Practice (2d ed.), in a note at page 340, says: ''The allegations of a bill must be specifically denied and it is not sufficient to start out with the word 'deny' followed by a recital of the allegations of the bill.'' To the same effect is the

case of Malvezzi v. Gulley, Tax Collector, 189 Miss. 20, 193 So. 42. The case of Bennett v. Chaffe, 69 Miss. 279, 13 So. 731, held in a suit to confirm title to land that "where the title is specifically set forth in the bill and not specifically denied, evidence thereof need not be produced." Simpson v. Ricketts, 185 Miss. 280, 186 So. 318, was a case wherein the appellants deraigned their title from the government down to a tax deed. It was contended that they were put upon proof of their title by the answer filed therein. The answer denied appellant's chain of title by a general traverse only. The court said, after quoting the statute, that "all matters of fact averred in the bill and not denied by the answer other than by the general traverse may be taken at the hearing as admitted. The court further said: "Under the statute each conveyance set out in the chain of title became an interrogatory to appellees which they were required to severally and fully answer," citing Griffith's Chancery Practice, 348 and 349. We are of the opinion, therefore, that under the allegations of the bill and the answer thereto, it did not devolve upon the appellees to make proof of the fact that drilling operations had within one year from the date of the lease been begun on the land or that the delay rental provided in the lease had been timely paid.

(Hn 5) We are further of the opinion that the foregoing contention of the appellants is not tenable for the reason that it is manifest from the pleadings, the evidence, and the opinion of the chancellor that on the trial of this cause in the court below no attack was made upon the title of the appellees upon the ground that drilling operations were not begun on the land or the delay rental paid prior to the expiration of a year from the date of the lease. Griffith's Chancery Practice, 2d edition, pages 745-746, states it to be a rule of almost universal application that questions of whatever nature not definitely raised in the trial court and preserved for review, will not be noticed on appeal. It is said that this

is true for the reason "that a litigant should not have his decree stayed by an appeal and then reversed on a question which he was not called on to contest in the trial court, when perhaps he could have successfully met it there." The rule, says Griffith, is further based "upon the dictates of a plain justice to the trial judge that error shall not be ascribed to him of things never heard of in the case until for the first. time presented in the appellate court." A like rule is to be found in the cases of Parker v. California Company, et al., 54 So. 2d 174, and City of Biloxi v. Lowery, 179 Miss. 364, 377, 175 So. 200.

We therefore conclude that the contention of the appellants that the decree of the court below should be reversed because the appellees have failed to prove their title is not sustained by this record.

(Hn 6) The appellants further contend that the appellees are not entitled to participate in the production because the well is located on the 30-acre tract and not on the 10-acre tract in which appellees claim their interest, and no pooling or unitization agreement has been entered into between the parties. In other words, the appellants contend that under the rule of capture they are entitled to all of the oil produced from a well on their land. It is true that this Court recognized the rule of capture in the case of Merrill Engineering Company v. Capital National Bank, 192 Miss. 378, 5 So. 2d 666. This case was decided, however, prior to the legislative enactments in this state of conservation laws and the promulgation thereunder of spacing regulations. We have just held in the case of B. C. Griffith, et al. v. Gulf Refining Company, et al., No. 38566, decided October 6, 1952, that the rule announced in this case is now limited and circumscribed by these subsequent legislative enactments. The facts are that Hassie Hunt Trust applied for and obtained permits from the State Oil and Gas Board and the Petroleum Administration for War to drill as a unit the

40-acre tract of which the 10 acres are a part. Because of the spacing regulations of the State Oil and Gas Board and the issuance of the permits to the Hassie Hunt Trust, the appellees are prohibited from drilling on the 10-acre tract. The promulgation of the spacing regulation is equivalent to a finding that one well will effectively drain the 40 acres. Our conservation laws authorizing the adoption of the spacing regulations were enacted in the public interest, to encourage development, to prevent waste, and to protect the correlative rights of parties. The Hassie Hunt Trust has, with the permission of the State Oil and Gas Board, chosen to treat the entire 40-acre tract as a drilling unit, claiming the entire leasehold estate. It has developed it as a drilling unit, claiming the proceeds of the production as the owner of the leasehold estate under separate leases on the south 10 acres and the north 30 acres. The one well is drawing from a common pool. Although the appellees, as this record shows, have established their title to the south 10 acres, they are prohibited from drilling thereon. Their hands, so to speak, are tied. Yet the appellants say in effect that even though the title to the leasehold estate in the south 10 acres be in the appellees, they, the appellants, are entitled to claim the production from the entire 40-acre unit because the well is on their land. If this be true, the Hassie Hunt Trust will be permitted to derive the same benefit from the 10-acre tract as though it had a valid lease thereon superior to that of the appellees and the appellees would suffer a grievous wrong without remedy. Such a result was said by this Court in the Griffith case, supra, to be unthinkable and contrary to the well-known equitable maxims: "Equity will not suffer a wrong without a remedy," and "Equity regards that as done which in fairness and good conscience ought to be done."

We need not further analyze the cases of Placid Oil Company v. North Central Texas Oil Company, Inc., et al., 19 So. 2d 616, 206 La. 693; Sun Oil Company v.

Stout, (La.) 46 So. 2d 151; Dillon v. Holcomb, et al., (5th Cir.) 110 Fed. 610, and the basis of those decisions and others of like views, nor need we analyze the cases of contrary views. We held in the Griffith case, supra, under an analogous state of facts, that when one procures and accepts certain benefits which would normally accrue from integration, it would be contrary to principles of equity to permit him to escape the burdens incident thereto and deny to the wronged party a remedy. In the Griffith case, the owner of a 160-acre tract applied for and obtained a permit to drill as a unit a 250-acre tract of which the 160 acres were a part. The remaining 90 acres of the unit were separately owned. The well was located on the 160-acre tract. The Court said: "On account of the fact that the well is evidently draining the 90-acre tract and that the owners of such acreage are thereby contributing to the production, actually the owners of the 160 acres must be getting more than they are entitled to, and this at a time, when those on the 90-acre part of the unit are receiving nothing. When these parcels of land were merged into one drilling unit, the imaginary line between them was obliterated in so far as the production of gas was concerned." The Court further said: "In this case, however, the appellees through their conduct received certain benefits which normally accrue from integration. When they procured and accepted such benefits, it follows that in like manner they assumed burdens incident thereto. . . . Under such circumstances, therefore, the denial of a remedy to the appellants would be contrary to certain maxims of equity. . . ."

(Hn 7) It is our conclusion, therefore, that appellees are entitled under the facts of this case to participate in the production to the extent of their interests therein as prayed for in the amended bill of complaint.

(Hn 8) It is argued by the appellants, however, that the appellees are estopped to claim participation in the well

on the 30-acre tract because they stood by and permitted the appellant, Hassie Hunt Trust, to drill the well and took no action until the well became a producer and the production therefrom was sufficient to pay the drilling and operating expenses. We find present in this record no elements of estoppel applicable to the appellees. The appellees asserted their interests before the drilling of the well began. The appellant, Hassie Hunt Trust, drilled the well in the face of the assertion by the appellees of their leasehold interest in the 10-acre tract. The appellants were not misled by any act of the appellees, and have suffered no disadvantage by any conduct of the appellees for the reason that the appellants will receive all of the oil that they are entitled to. In Crooker v. Hollingsworth, 46 So. 2d 541, the Court said: ''The party who invokes an equitable estoppel must have lost something or been placed at some disadvantage by the conduct of the other parties.''

(Hn 9) We are unable to agree with appellants' contention that the appellees will suffer no damage if denied participation in the well, and that if they do suffer such damage their remedy therefor is in an action at law. The facts are clear that if appellees are denied participation in the well, the appellants will drain the entire 40-acre tract, thus depriving the appellees of their oil interest in the south 10 acres, resulting in substantial damage to them. They are not restricted to an action at law for the adjustment of their rights arising under the facts of this case. This is a suit to confirm title, to remove clouds, and to require an accounting, and the jurisdiction of a court of equity over such matters is clear and needs no citation of authorities in support thereof. This same contention was made and rejected by the court in the Griffith case, supra.

(Hn 10) We are unable to grasp the force of appellants' contention that to permit appellees to participate in the production will result in taking the property of the ap-

pellants without due process of law. To withhold or take from one that which he does not own is not a taking of his property. The appellees are not seeking by this suit to take the property of the appellants, but are seeking the preservation of their own property rights. It is our opinion, therefore, that to allow participation by the appellees in the production will not result in a taking of the appellants' property without due process of law, and in fact will not result in the taking of any of appellants' property. It will serve only to preserve to the appellees their own property.

We are accordingly of the opinion that the decree of the court below should be and it is affirmed.

Affirmed.

All Justices concur.