RYAN CONSOL. PETROLEUM CORP.

v.

PICKENS et al.

No. 6704.

Court of Civil Appeals of Texas. Texarkana.

Feb. 4, 1954.

Rehearing Denied March 18, 1954.

A. W. Walker, Jr., Eldridge & Goggans, Dallas, Jones, Herring & Jones, Austin, for appellant.

Prentice Wilson, Dallas, Power, Mc-Donald & Mell, Gilmer, Moody & Robertson, Austin, M. H. Barton, Henderson, Chilcote & Clark, Tyler, William W. Harris, Quitman, for appellees.

FANNING, Justice.

In the opening paragraph of appellant's brief, it makes the following statement of the nature of the suit, which is concurred in by appellees:

"This is a suit for equitable relief against the confiscation of its property and property rights instituted by Ryan Consolidated Petroleum Corporation, hereinafter referred to as Ryan, as the owner of $7/8$ oil, gas and mineral leasehold interest in $5/6$ of the minerals underlying lots 12 and 13, against W. L. Pickens and H. H. Coffield, hereinafter sometimes referred to as Pickens and Coffield, owners of a $7/8$ oil, gas and mineral leasehold interest in $5/6$ of the minerals underlying lots 10 and 11." Ryan has appealed from a "take nothing" judgment rendered by the trial court without intervention of a jury. The court filed his findings of fact and conclusions of law.

On and prior to October 18, 1940, lots 10, 11, and 12 were owned in fee simple by the heirs of H. C. Holmes and wife, both deceased, and they had a good limitation title to Lot 13, conceded by all parties and so found by the trial court. These four lots extended in a north and south direction and together constituted a .4 acre tract. Each of the lots is 30 feet wide and 113

feet long. Lot 10 is the most easterly and Lot 13 is the most westerly. Lots 11 and 12 lie in between 10 and 13.

On October 18, 1940, adult Holmes heirs executed an oil and gas lease to Kermit Smith and Frank Morrison on the four lots, the interest of the lessors being ⅔. On November 9, 1940, the minor three heirs, acting through their guardian, executed two leases to Frank Morrison, covering the remaining ⅓ interest in the four lots. It appears that a controversy arose as to whether it was intended to include 12 and 13 in these leases and the controversy was settled by release of lots 12 and 13 therefrom, and thus the oil and gas leases to lots 10 and 11 remained in Smith and Morrison.

On December 26, 1940 Coffield became the owner by assignment of the leases covering lots 10 and 11, and on December 28, 1940, he assigned said leases insofar as they covered lot 11 to Pickens. Coffield and Pickens remained owners in severalty of lots 10 and 11, respectively, until August 7, 1946, upon which date they converted their separate interests into a joint interest by proper assignments, each thereby becoming the owner of an undivided ½ leasehold interest in lots 10 and 11, except as to a ⅙ interest.

By instruments dated December 26, 1940, and February 17, 1941, Ryan became the owner and holder of a ⅞ leasehold interest in oil and gas under lots 12 and 13, except an undivided ⅙ interest therein, given by the Holmes heirs, minors, acting through their guardians.

On November 14, 1945, Pickens and Coffield jointly with the Railroad Commission filed their application to drill an oil well on lots 10 and 11, or either of them. This was docketed as case No. 31816–A.

On November 16, 1945, Ryan filed its application to drill an oil well on lots 12 and 13, or either of them, the case being docketed by the Railroad Commission as No. 31814–A. On December 21, 1945, both applications were denied by the Commission, but on February 26, 1946, the Commission granted rehearings in each application.

On April 3, 1946, Pickens and Coffield were granted a permit to drill a well in the geographical center of the four lots and the application of Ryan for a permit was again denied.

A few days thereafter, however, all parties were granted a rehearing by the Commission.

On July 3, 1946, the application of Pickens and Coffield was granted by the Commission and they were authorized to drill an oil well on the south part of Lot 11, 25 feet north of the south line and 25 feet east of the west line of lot 11, that is, 5 feet west of the east line of said lot. On July 5, 1946, Ryan's application for a well on lots 12 and 13 was again denied. Ryan's application for rehearing of the order granting permit to Pickens and Coffield, as well as its application for a rehearing of the order denying its own application were both denied.

Ryan appealed from these orders to the district court of Travis County and said suit was docketed Ryan Consolidated Petroleum Corporation v. Railroad Commission, No. 76490. After hearing the district court of Travis County set aside the order of the Railroad Commission granting a permit in favor of Pickens and Coffield and affirmed the order of the Commission insofar as it denied a permit to Ryan. From the judgment of the district court of Travis County all parties appealed to the Austin Court of Civil Appeals. The Court of Civil Appeals thereafter reversed the judgment of the district court of Travis County insofar as it set aside the order of the Commission granting a permit to Pickens and Coffield, and affirmed the order of the Commission in granting such permit. The Court of Civil Appeals affirmed the order of the district court insofar as it upheld the action of the Commission in denying permit to Ryan. Pickens v. Ryan Consolidated Petroleum Corporation, Tex. Civ.App., 219 S.W.2d 150, 153. Ryan's application to the Supreme Court for a

writ of error was denied, no reversible error.

Pickens and Coffield completed an oil well to production at the location on lot 11, fixed by the Railroad Commission.

The foregoing facts are without dispute in the record and were so found by the trial court. The material facts in this entire case are practically without dispute, so far as they control the disposition of the issues arising in this appeal, and except as otherwise indicated we adopt the findings of the trial court as to such material facts. There were numerous defendants in the case, but their interests are subsidiary and it is not necessary to name them nor to define their interests. All of the defendants who have filed briefs adopt the briefs of the appellees.

The principal question presented by this appeal is whether, under Texas law, where four lots, comprising together a .4 acre tract of land, under well-spacing laws and the rules and regulations of the Railroad Commission of this state, was entitled to and granted permit to drill only one well to "prevent confiscation and waste," it was error to deny one of two equal subdivision lessees a right to share in the production from that well so drilled by the other lessee upon a proportionate basis, or whether, as the trial court held, the owners of the oil interest under the separate tract on which the well was drilled are entitled to all the oil produced from such well, less, of course, royalties due from the well to the fee owners of the separate tract.

The Austin Court of Civil Appeals in passing upon the phases of this matter there involved in the case of Pickens v. Ryan Consolidated Petroleum Corporation, supra, used the following language: "By their second assignment the appellants complain of the error of the court in holding that no permit could be granted by the Commission until the said four lots had been pooled for such production, and an application for the joint development of the four lots for the use and benefit of all owners had been made. In its findings of fact

and conclusions of law, the court, among others, filed conclusion No. 4, as follows: 'Said four lots being capable of full development as a whole or entire tract for oil and gas purposes by one well, and being entitled to at least one well, but neither said lots Nos. 10 and 11, considered as a unit, nor said lots Nos. 12 and 13, considered as a unit, being capable of separate development in compliance with the rules and regulations of the Railroad Commission applicable to said field, the owners of leases in said four lots should be relegated to the situation as it existed prior to the subdivision of said four-lot area into separate lease tracts, which was a joint right to drill for the benefit of the owners of the oil, gas and other minerals in and under all four lots and the owners thereof have not been and are not so relegated until their separate lease tracts have been reunited as they were prior to leasing, either by pooling or by application for the joint development of the four lots for the use and benefit of the owners of the said four lots, neither of which has been done. The Railroad Commission, therefore, either should have denied both applications or withheld action thereon until such had been done, and its failure so to do is arbitrary, capricious, improper and unjust in that the granting to one and denying to the other of the applicants a permit to drill constitutes an attempt by the Commission to decide and declare priority of rights when no priority of rights exists.' *This conclusion we do not believe finds support in law or in fact.* Art. 6014, Subd. g, Vernon's Texas Civil Statutes, reads as follows: '* * * however, it is not the intent of this Act to require repressuring of an oil pool or that the separately owned properties in any pool be unitized under one management, control or ownership.' The Railroad Commission has the power and duty to adopt rules concerning the conservation of the mineral resources of the State, but cannot limit the right to convey or partition by the owner of his land as to surface or mineral estate; such owner or owners cannot as a result of such conveyance of mineral estate secure an advantage, and thereby secure

permits for wells on such subdivision. * * *The Railroad Commission does not have the power to force a pooling agreement upon unwilling owners of mineral estates, and the trial court in this case did not have the power or authority to force a pooling of the mineral estate.* * * This judgment is without prejudice to the assertion by Ryan or other interested parties of any right which they may have in or to the oil or gas produced or to be produced from the well drilled by Pickens and Coffield on the lots in suit. * * *"

In resolving the questions presented we must keep in mind some well settled rules established by our courts. "* * * the doctrine of ownership in place obtains in this state, the oil and gas beneath the soil being considered a part of the realty, so that, in the absence of a severance by sale or otherwise, each owner of land owns separately, distinctly, and exclusively all of the oil and gas beneath his land (See Tex.Jur.Vol. 31A, sec. 6, for authorities) *and is not a mere joint owner with other adjoining land owners in a common pool of oil beneath the several tracts of land, with a mere right to mine therefor."* (Emphasis added.) Magnolia Petroleum Co. v. Zeppa, Tex.Civ.App., 70 S.W.2d 777, 779, wr. ref. The owner of the fee has the right to prospect for, develop and produce the oil and gas lying in place under his land, subject to the conservation laws of this state. Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941, 948, and subject to the law of capture, Elliff v. Texon Drilling Co., 146 Tex. 575, 210 S.W.2d 558, 561, 4 A.L.R.2d 191.

Oil well drilling permits are granted by the Railroad Commission in the administration of conservation laws. When a permit is granted it is restricted to a specific location and none other may be substituted without approval of the Commission. Its only function, and the only right granted, is to drill a well at the particular location, and in compliance with rules of the Commission. It carries no restrictions against assignment or transfer of the right to drill, nor against assignment or conveyance of the land in whole or in part. The area included in the application and in the Commission's order and the general location of the land are material only insofar as they inform the Commission of fact to enable it to act under spacing Rule 37. The order of the Commission granting a permit is in the nature of a license, and does not vest any interest in any person to the oil or gas in place or which may be produced. These rights last named rest upon muniments of title. A drilling permit is not a muniment of title. In Mueller v. Sutherland, Tex.Civ.App., 179 S.W. 801, 804, writ refused for want of merit, it is said: "The property rights of owners or lessees between each other are unaffected by the valid rules and regulations of the Commission respecting the development of an oil field. Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, loc. cit. 944 [87 S.W.2d 1069,] 99 A.L.R. 1107 [101 A.L.R. 1393]; Magnolia Petroleum Co. v. Blankenship, 5 Cir., 85 F.2d 553. * * *"

Texas courts have followed the great weight of authority in this country by adopting what is generally known as the non-apportionment theory. That theory, in the language of Judge Murrah of the Tenth Circuit in the case of Republic Natural Gas Co. v. Baker, 197 F.2d 647, 648, is "to the effect that absent an express covenant or supervening valid regulations, the owner of mineral interests under a portion of land subject to an oil and gas lease is entitled to all of the rents and royalties accruing from the production of oil or gas from that land, even though the lease may cover other tracts." In that case it was held that the spacing and proportion orders of the Corporation Commission did not provide for nor result in unitization, and to hold with appellant Republic would have amounted to compulsory unitization.

In Summers Oil and Gas, Vol. 3, § 608, will be found an informative history of judicial decisions on this question. The first Texas case directly facing the ap-

portionment issue as a matter of law only, there being no provision in deeds to construe, was Japhet v. McRae, Tex.Com.App., 276 S.W. 669, 670. In that case the Commission of Appeals approved as correct the following proposition of law: "Where the lessor of land for oil and gas, subsequently to the execution of the lease, but prior to the development of the land and the production of oil or gas under the lease, sells a portion or portions of the land to others, and oil and gas are thereafter produced under the lease from some portion of the leased premises, the royalties therefrom belong to the owner of the particular tract upon which the well is located, and the owner or owners of other portions of the leased premises have no interest therein." The court in this case also uses the following language: "* * * *It seems to us that the only safe rule, and the only one free from much confusion, is one which gives the oil to the man who owns the land upon which the well is located. * * *"* (Emphasis added.)

The following cases are in accord with Japhet v. McRae, supra, to-wit: Hinds v. McCord, Tex.Civ.App., 45 S.W.2d 442; Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801, wr. den., w. m.; Hill v. Roberts, Tex.Civ.App., 284 S.W. 246, 249; Bibb v. Nolan, Tex.Civ.App., 6 S.W.2d 156, wr. ref.; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741; Harris v. Wood County Cotton Oil Co., Tex.Civ.App., 222 S.W.2d 331; Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988.

The case of Nale v. Carroll, Tex.Civ. App., 266 S.W.2d 519, is in some respects similar to the case at bar. In that case a permit had been granted to drill a well on a .51 acre tract as an exception to Rule 37 of the regulations of the Railroad Commission. The tract was later subdivided into smaller tracts with Nale owning .093 acres, and Longshore-Carroll owning .17 acres, and the remaining tract being owned by parties who did not appeal from the judgment of the trial court. The well was drilled on the Longshore-Carroll tract and Nale brought suit for an apportionment of the royalties from said well on the basis that the square-footage of land owned by him bore to the total square-footage of the one-half acre. Nale also asserted co-ownership of the oil produced from the well and urged that the deed subdividing to him the land did not have the effect of depriving him of such ownership, that the permit was a valuable property right that attached to the drilling unit of the one-half acre, and ran with the land deeded to him, and that Longshore-Carroll had converted his part of the oil and funds derived from its sale to their own use and benefit, and he also alleged a trespass by drainage. In that case all of the written instruments there involved contained no pooling or unitization provisions. In affirming the judgment of the trial court denying the claims of Nale, this court said: "It is well established that there can be no compulsory unitization in Texas, and to yield to the claims of appellants in this case would practically effect unitization."

Appellant in its reply brief makes the following statements: "Appellant does not assert that its leasehold estate in Lots 12 and 13 has been pooled or unitized with the leasehold estate of appellees in Lots 10 and 11. No action on the part of the Commission, nor conveyances between the parties, effecting a forced pooling or unitization of the respective leasehold estates of the parties, is in any way necessary to entitle appellant to the relief requested. Appellant merely contends that the courts of this state in announcing the rule against subdivisions of tracts entitled to only one well have, as a matter of law, recognized and decreed that the subdivisions so made remain a single development and producing unit just as they were prior to such subdivision * * *. Appellant claims no possessory right in Lots 10 and 11 nor any right to operate and produce the oil from the well located within boundaries of Lots 10 and 11. It merely claims the right to prevent confiscation of its oil by being permitted an equitable share of the production of the single well authorized by law to produce the oil from beneath

both the leasehold estate owned by appellant and the leasehold estate owned by appellees—and only the right to share in such production after appellees have recovered therefrom their entire reasonable and necessary drilling and operating costs."

Appellant in contending that Ryan is entitled to equitable relief makes the following statement in its brief: "Since our Texas conservation laws and rules of the Railroad Commission do not expressly or impliedly require the confiscation of Ryan's oil, those laws and rules are valid, and the permit granted to Pickens and Coffield to drill a well on the .4-acre tract is likewise valid. Likewise, the denial of a permit to Ryan to drill an offset well was justifiable as a reasonably necessary incident of the exercise of the police power to prevent waste by controlling the spacing of wells. Ryan, however, is entitled to demand that it be afforded 'adequate means of protection' against the confiscation of its property 'as a substitute' for the denial of that means of protection which the common law awarded him; i. e., as a substitute for his common-law right to drill an offset well. Since the Railroad Commission lacks jurisdictional power to grant Ryan any substitute relief against the confiscation of its property, both the jurisdiction and the duty to grant an appropriate substitute remedy rests in the courts of this state."

Appellant cites a recent Mississippi case, Hassie Hunt Trust v. Proctor, 215 Miss. 84, 60 So.2d 551, 556, wherein appellant states that the Mississippi court granted the very type of equitable relief requested here by Ryan. This case however was predicated upon Mississippi statutes which had limited and circumscribed the rule of capture in that state. We quote from the court's opinion in said case as follows: "The appellants further contend that the appellees are not entitled to participate in the production because the well is located on the 30 acre tract and not on the 10 acre tract in which appellees claim their interest, and no pooling or unitization agreement has been entered into between the parties.

In other words the appellants contend that under the rule of capture they are entitled to all of the oil produced from a well on their land. It is true that this court recognized the rule of capture in the case of Merrill Engineering Co. v. Capital National Bank, 192 Miss. 378, 5 So.2d 666. This case was decided, however, prior to the legislative enactments in this state of conservation laws and the promulgation thereunder of spacing regulations. We have just held in the case of Griffith v. Gulf Refining Co. [215 Miss. 15], 60 So.2d 518 [61 So.2d 306], that the rule announced in this case is now limited and circumscribed by these subsequent legislative enactments." It is our view that the above referred to Mississippi case has no application to the case at bar.

The trial court in the case at bar found that the Pickens-Coffield well had drained some oil from outside the boundary lines thereof but that under the evidence it was impossible to ascertain whether such oil was drained from land to the north, south, east or west, nor how much from any direction, and that each of the said four lots 10, 11, 12 and 13, were underlain at all times from the discovery of the Hawkins field up to the time of the trial with practically the same amount of oil under each lot. We think these findings of the trial court are supported by the evidence.

Appellant earnestly contends that it is not seeking a forced unitization but is seeking an equitable substitute remedy in order to prevent its oil being confiscated. Our Supreme Court in an opinion by Justice Critz, in the case of Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W. 2d 73, 80, in discussing the effect of the voluntary subdivision rule holds that the right to be protected against confiscation under 'Commission' oil and gas rules is not absolutely unconditional or unlimited. We quote from this decision as follows: "It is the law that every owner or lessee of land is entitled to a fair chance to recover the oil and gas in or under his land, or their equivalents in kind. Any denial of

such fair chance would be 'confiscation' within the meaning of Rule 37 and the Rule of May 29th. Empire Gas & Fuel Co. v. Railroad Commission, Tex.Civ.App., 94 S. W.2d 1240, writ refused. The right to be protected against 'confiscation' under Commission oil and gas rules is not absolutely unconditional or unlimited. We will not discuss the condition or limitation which the Rule of May 29th has imposed or engrafted on the right to be protected against 'confiscation.' An examination of the order or rule of May 29, 1934, hereinafter referred to as the Rule of May 29th, will show that subdivisions of land, as such, which have or hereafter may come into existence after Rule 37 became effective are not protected at all against confiscation. When Rule 37 and the Rule of May 29th are read together, it is evident that exception permits may be issued to protect such tracts from waste; but such exception permits cannot be issued to protect such tracts, as such, from confiscation. In this regard, the Rule of May 29th states 'no subdivision of property made subsequent to the adoption of the original spacing rule will be considered in determining whether or not any property is being confiscated within the terms of such spacing rule, and no subdivision of property will be regarded in applying such spacing rule or in determining the matter of confiscation if such subdivision took place subsequent to the promulgation and adoption of the original spacing rule.' To our minds, language could not be made plainer, or more all inclusive. Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, supra."

 A permit to drill, granted by the Railroad Commission in administration of conservation laws, can certainly have no higher function in passing title than solemn conveyances. In Tex.Jur., Vol. 3-A, § 5, p. 27, it is said that "the conservation statutes and the regulations of the Commission made thereunder have not abolished the ownership of oil in place nor the right of capture without liability to adjoining owners." This is the broad, general base on which must rest judicial construction in related matters. The decisions referred to above have definitely established the principles upon which this case must be grounded.

 It is well established that there can be no compulsory unitization in Texas, and to yield to the claims of appellant in this case would practically effect unitization.

 Appellant also contends that appellees are judicially estopped to deny that the well was drilled upon and is producing from the entire unit and to deny Ryan who offered to join in drilling said well, to participate in the production therefrom on an equitable basis. Appellees contend, among other things, that appellant and the Railroad Commission in the proceedings before the Commission and the courts in the statutory appeal were fully advised that Pickens and Coffield had consistently refused to make an agreement with appellant pooling Lots 10 and 11 with Lots 12 and 13 but insisted that one well to which the four lots were entitled should be drilled on Lots 10 and 11 and that Pickens and Coffield, in case the well was so drilled, would claim the right to all the oil produced thereby. Lengthy evidence on the estoppel issue, both documentary and parol, was introduced by both appellant and appellees, which we deem unnecessary to detail here. The findings of fact of the trial court which negative the estoppel theory, we think are sufficiently supported by the evidence. The trial court in its conclusions of law also found that there was no basis for the operation of the law of estoppel or show a change of position by any of the parties and the evidence did not indicate that Pickens and Coffield either intended to assert any leasehold rights in Lots 12 and 13 or to relinquish any leasehold rights in Lots 10 and 11 and vest them in Ryan Consolidated. We think the trial court correctly held that appellees were not estopped to claim the oil produced by them.

Having reached the conclusions above stated we deem it unnecessary to pass upon appellees' contention that Ryan had failed

to establish by sufficient proof its ownership of oil and gas leases on Lots 12 and 13.

Finding that the judgment rendered by the trial court is the only judgment that could properly be rendered in this case, and that no reversible error has been presented, appellant's points of error are respectfully overruled, and the judgment of the district court is affirmed.