HUMBLE OIL & REF. CO. *v*. HUTCHINS, et ux.

May 18, 1953

No. 38640 32 Adv. S. 29 64 So. 2d 733

638

*J. A. Thompson* and *M. M. Roberts,* for appellant,

*J. Kenneth Riley* and *W. E. Morse,* for appellees.

LOTTERHOS, J.

Appellees own 169.42 acres of land in Jefferson Davis County, substantially all of which lies within the Gwinville Gas Field. On July 1, 1940, they executed a mineral lease on said land, which lease was assigned by the lessee to appellant. Subsequently, after a survey had been made, appellees executed to appellant an amendment of said lease, correcting the land description and showing the acreage as stated above. After the lease was executed, appellees conveyed to Thomas O. Payne an undivided one-fourth royalty interest in said land, for a twenty year term, but without participation in the making of leases or in the receipt of bonuses and delay rentals. Payne conveyed one-half of his royalty interest, or one-eighth of the royalty, to Homer R. Peterson.

The lease executed by appellees and held by appellant was of the so-called "unless" type and provided that it should be for a primary term of ten years "and as long

thereafter as oil, gas or other mineral is produced from said land hereunder.'' It contained neither a pooling agreement nor a force majeure provision. Delay rentals were paid during the primary term of the lease, but no well has at any time been drilled on said land.

After the expiration of ten years from July 1, 1940, appellees filed their bill in chancery to cancel the lease and the assignment thereof, on the ground that the lease expired on July 1, 1950, because, according to their claim, there was no production from said land under said lease. At the conclusion of the trial, there was a decree granting the relief prayed and cancelling these instruments. On this appeal, appellant presents the defenses made in the court below, which are based upon the facts hereinafter outlined.

Of the 169.42 acres of land involved in the litigation, 120 acres are included in Gwinville Gas Unit No. 52 and 42.7 acres are included in Unit No. 55. Each of said units consists of 320 acres. The remaining 6.72 acres are not included in any unit, but are adjacent to the mentioned units.

It was stipulated that in 1949 appellant sought to establish Unit No. 52, and fully and strictly complied with the applicable laws and the rules and regulations of the Oil and Gas Board then in force; that it and other lease owners executed an instrument dated August 31, 1949, purporting to combine into a pooled unit the land located in Unit No. 52; that it applied for a well permit on said unit on September 22, 1949; that the well was completed on November 22, 1949; that it has been producing since that time; and that appellees have been tendered their proportionate part of the royalty, but refused to accept it. Appellant and certain other parties executed a joint operating contract dated August 31, 1949, on Unit No. 52. The unit well was not on appellees' land.

It was also stipulated that in 1949 appellant sought to establish Unit No. 55, and fully and strictly complied with the applicable laws and the rules and regulations of the

Oil and Gas Board then in force; that it and other lease owners executed an instrument dated October 21, 1949, purporting to combine into a pooled unit the land located in Unit No. 55; that it applied for a well permit on said unit on October 20, 1949; that the well was completed on December 28, 1949; that it has been producing since that time; and that appellees have been tendered their proportionate part of the royalty, but refused to accept it. Appellant and certain other parties executed a joint operating contract dated November 15, 1949, on Unit No. 55. The well was not on appellee's land.

On May 19, 1950, the Oil and Gas Board set allowables for the Gwinville Gas Field for the month of June, 1950, and the order for that purpose set the allowable for Unit No. 52 and Unit No. 55, as well as other gas units. It was stipulated that the Oil and Gas Board allowed full 320 acre allowables on Unit No. 52 and Unit No. 55 from the completion of the wells to the date of trial, and that full allowables were produced.

Under the terms of Sec. 21, Chap. 256, Laws of 1948, the rules and regulations of the board under the authority of Chap. 117, Laws of 1932, and Chap. 305, Laws of 1936, and certain other statutes, were continued in effect for six months only from the effective date of the 1948 statute, which was May 9, 1948. Therefore, the Gwinville spacing rules of August 11, 1947, and the state-wide spacing rules of September 11, 1947, could have no further force and effect after November 9, 1948. However, on October 29, 1948, the Oil and Gas Board adopted new spacing rules for the Gwinville Field and new state-wide spacing rules, under the authority of the 1948 statute. These rules were similar to those previously existing, and provided for gas units of 320 acres.

On application of appellant, the Oil and Gas Board entered an order on June 23, 1950, unitizing and integrating the interests of all owners in Unit No. 55, including leasehold, royalty, and other interests, under the authority of Chap. 256, Laws of 1948, as amended by Chap. 220,

Laws of 1950. An appeal from this order for forced pooling of Unit No. 55 was taken to the circuit court by the present appellees (R. R. Hutchins and wife). The judgment of the circuit court was an affirmance of the order of the Oil and Gas Board. This Court affirmed said judgment of the circuit court (Hutchins v. Humble Oil & Refining Co., Miss., 59 So. 2d 103), and held that the board order of June 23, 1950, providing compulsory pooling and integration of Unit No. 55, was valid.

There was no order of the board purporting to force pooling and integration of Unit No. 52.

This case is very largely controlled by recent decisions of this Court in cases involving similar situations with respect to gas units in the Gwinville Field. In several cases it has been held that ▮▮ a gas unit was legally established under the authority of Chap. 117, Laws of 1932, and Chap. 305, Laws of 1936, and the Gwinville spacing rules of August 11, 1947, and the state-wide spacing rules of September 11, 1947, when the lessees in the unit had pooled their interests, the plat of the unit had been filed with the board, the operator of the unit had applied for and obtained a well permit and completed a well on the unit, and the board had set allowable production for the unit. It is unnecessary to detail more fully the acts of the board and of the lessees which have been deemed sufficient to establish the gas drilling unit. See Superior Oil Co. v. Foote, Miss., 214 Miss. 857, 59 So. 2d 85; Green v. Superior Oil Co., Miss., 59 So. 2d 100; and Superior Oil Co. v. Beery, Miss., 59 So. 2d 689. In the case at bar, the various steps leading up to the establishment of the units took place after the spacing rules of October 29, 1948, were adopted under the authority of Chap. 256, Laws of 1948. But these rules were substantially the same as those of August 11, 1947, and September 11, 1947. It follows, therefore, that under the facts of this case Unit No. 52 and Unit No. 55 were legally established. In fact, this Court has heretofore so held in the case of Unit No. 55.

Hutchins v. Humble Oil & Refining Co., Miss., 59 So. 2d 103. If it be said that the act of 1948 expressly denied to the board the power to compel integration of units exceeding forty acres in area, the answer is that this Court has already held that, nevertheless, a 320 acre unit could be established, and that, the unit having been established, the result was the same, when there was production from such a 320 acre unit, as if the board had possessed and exercised the power to force integration. Superior Oil Co. v. Foote, Miss., 21 Adv. S. 100, 63 So. 2d 137 (suggestion of error overruled, 29 Adv. S. 46, 64 So. 2d 355).

Not only has Unit No. 55 been legally established, but the mineral interests therein were pooled and integrated by the board order of June 23, 1950, under the authority of Chap. 256, Laws of 1948, as amended by Chap. 220, Laws of 1950. This was shortly before the expiration of the primary term of the Hutchins lease. This order for compulsory integration was upheld in the Hutchins case, supra.

We now come to the principal point for consideration. Does production from a well on Unit No. 52 prior to July 1, 1950, keep the lease alive with respect to the 120 acres of appellees' land included in that unit, when the well is not located on any land described in the lease, and appellees have made no agreement for integration or pooling of their mineral interest? Also, does similar production in the case of Unit No. 55 keep the lease alive with respect to the 42.7 acres of appellees' land included in that unit?

It has been held that one in the position of appellees, that is, owning a mineral interest in a producing unit, has the legal right to claim and receive his proportionate part of the production from the unit. It cannot be denied him. Griffith v. Gulf Refining Co., Miss., 60 So. 2d 518, and Hassie Hunt Trust v. Proctor, Miss., 60 So. 2d 551. This Court has also held that when a drilling unit

has been legally established, and there is production therefrom, so that a mineral lessor of land within the unit is entitled to receive his share of production, the primary term of the lease is thereby extended, even though the lessor has refused to agree to pooling of his interest, and the unit well is not on his land. The theory is that under such circumstances there is in effect production under the lease from the leased land, as if the lessor had agreed to pooling of his interest, or as if the well were located on the leased land. This doctrine has been established by Superior Oil Co. v. Beery, Miss., 63 So. 2d 115, (suggestion of error overruled, 64 So. 2d 357), and Superior Oil Co. v. Foote, Miss., 21 Adv. S. 100, 63 So. 2d 137, (suggestion of error overruled, 29 Adv. S. 46, 64 So. 2d 355). These cases control here, and it follows that the Hutchins lease was extended beyond the primary term, with respect to the 120 acres included in Unit No. 52 and the 42.7 acres included in Unit No. 55. In the case of Unit No. 55, there is the additional reason that the mineral interests in that unit were effectively integrated by the board on June 23, 1950, which was eight days before expiration of the primary term, under the authority of the 1950 act.

It is intimated by appellees that appellant's efforts to establish Unit No. 52 and Unit No. 55 were ineffective, because of misrepresentations made to the board by appellant with respect to approval of pooling by the lessors. However, the briefs do not press this point. As shown at the beginning of this opinion, Thomas O. Payne and Homer R. Peterson each owned a one-eighth non-participating royalty interest in the Hutchins land, acquired by purchase from appellees. Three-fourths of the royalty, and all of the right to lease and receive bonuses and rentals, remained in appellees. On July 15, 1948, said Payne and Peterson executed to appellant an amendment of the Hutchins lease. That instrument recited that "the undersigned are the owners of the Lessor's interest in the minerals and royalties thereunder"; and then set forth the agreement between said Payne and Peterson

and appellant to amend the lease to provide for pooling if desired by appellant. The pooling agreements executed by appellant and other lessees in connection with the establishment of Unit No. 52 and Unit No. 55, previously referred to, in each instance described the leases included in the unit, and then recited that "under the terms of said leases as amended the Lessee has the right and power to pool and combine all or a portion of the acreage covered by each of the above leases with other land. . . ."

Of course, ▆▆ Payne and Peterson had no power to amend the lease so as to affect or modify the interest and rights of appellees. They were not the owners of the lessor's interest. Furthermore, appellant did not have the right by contract under a lease amendment to pool and combine the acreage insofar as appellees were concerned. In the case of Unit No. 55, the above circumstances cannot now be used to attack the validity of the establishment of the unit because the validity thereof has been confirmed by previous litigation between the parties. Hutchins v. Humble Oil & Refining Co., Miss., 59 So. 2d 103. Also, we do not find that these circumstances affect the validity of Unit No. 52. Regardless of the erroneous statement contained in the pooling agreement, appellant succeeded in establishing the unit, with the approval of the board, and completed a well thereon. Appellees were not prejudiced by the statement.

What has been said up to this point disposes of this case except with respect to the respective property rights of the parties in the 6.72 acres of appellees' land not included in Unit No. 52 and Unit No. 55. This small acreage consists of two parcels, located as follows: One in the northeast corner of the northwest quarter of the southwest quarter of Section 29, south of Unit No. 55 and west of Unit No. 52, and adjacent to said units; and the other in the north part of the northeast quarter of the northwest quarter of Section 32, south of Unit No. 52,

and adjacent to said unit; both parcels being in township 9 north, range 19 west.

It is argued pro and con that if the lease was extended beyond the primary term with respect to Unit No. 52 and Unit No. 55, by production in said units, then the lease was thereby also extended with respect to the two small parcels outside of these units. Appellant contends that production from that part of the leased land included in the two units, resulting from wells completed in these units but on other land, has the same effect in extending the term of the lease as to the 6.72 acres, as if there were a well on the leased land producing therefrom. We do not find it necessary to consider and pass upon this proposition in this case for reasons hereinafter set forth.

In the answer to the original bill of complaint, appellant averred that appellees' title was subject to the amendment of the lease executed by Thomas O. Payne and Homer R. Peterson, dated July 15, 1948. Also, as heretofore commented, appellant recited in the pooling agreements with respect to Unit No. 52 and Unit No. 55 that under leases as amended it had the right and power to pool and combine all or a portion of the leased land with other land. Appellant thereby claimed the right to pool the leased land by virtue of the Payne-Peterson amendment; and we think it must accept as binding on it the full terms of that amendment, as well as that part favorable to it.

The aforesaid amendment, executed by appellant as well as by Payne and Peterson, first incorporates a pooling agreement, purporting to authorize appellant as lessee to pool all or part of the leased land with other land, and then provides: ". . . it is expressly agreed that operations upon or production had from any acreage covered by this lease and included in a pooled unit, as provided in Paragraph 3-a of this lease as amended, shall not be considered as operations upon or production from the acreage covered by this lease and not included in said pooled unit, and as to any such acreage covered by this

lease and not included in a pooled unit this lease may be maintained in force either by the payment of delay rentals as provided in Paragraph 4 of said lease upon the acreage not included in the unit or may be maintained in any other manner provided by said lease other than by drilling operations upon or production from a unit pooled under the provisions of Paragraph 3-a of said lease as amended in which unit said land is not included. . . ."

 It is our view that appellant is bound by the above agreement made by it, and that production in Unit No. 52 and Unit No. 55 does not serve to extend the primary term as to the 6.72 acres outside of those units.

It follows from the views herein expressed that the final decree in the court below will be reversed insofar as it granted relief to appellees with respect to that part of the leased land located in Gas Units No. 52 and No. 55, but that it will be affirmed as to the relief granted with respect to the land outside of those units. The appellant will be charged with one-half of the costs of court and the appellees with one-half thereof.

The conclusion reached in this case, insofar as it concerns Unit No. 52 (which was not integrated prior to expiration of the primary term of the lease by order of the Oil and Gas Board under the authority of Chap. 256, Laws of 1948, as amended by Chap. 220, Laws of 1950), is the result of the application of the doctrine established by this Court in Superior Oil Co. v. Beery, and Superior Oil Co. v. Foote, supra. Those cases control and must be followed. However, the writer of this opinion desires to comment that he adheres to the views expressed by him in his dissenting opinions written on the suggestions of error in those cases (see Beery case dissent, 64 So. 2d 361, and Foote case dissent, 64 So. 2d 356), although he must now accept the doctrine of those cases as the law.

Reversed in part; affirmed in part; and remanded.

*McGehee, C. J.*, and *Hall, Holmes,* and *Arrington, JJ.,* concur.

HALL, J., Specially Concurring.

I did not participate in the consideration or decision in the case of Superior Oil Co. v. Beery, 63 So. 2d 115, for the reason that the law firm of which I was formerly a member represented the appellee therein, nor did I participate in the consideration or decision in Superior Oil Co. v. Foote, 63 So. 2d 137, for the reason that it involved the same point as the Beery case. In my opinion the decisions in those cases are erroneous in holding that the State Oil and Gas Board had the authority to compel pooling of all mineral interests in a unit of more than 40 acres under the type of lease involved in those cases prior to the adoption of Chapter 220, Laws of 1950, and are further erroneous in holding that the establishment of a drilling unit had the effect of forcing the pooling of all mineral interests therein. However, I consider myself bound by those decisions and therefore concur in the result reached in the case now at bar.

---

### ON SUGGESTION OF ERROR

July 3, 1953 35 Adv. S. 5 65 So. 2d 824

HALL, J.

Under authority of Superior Oil Co. v. Foote, 214 Miss. 857, 59 So. 2d 84, and Green v. Superior Oil Co., 59 So. 2d 100, not yet reported in the State Reports, the suggestion of error is overruled as to the merits of this case on Units 52 and 55.

That part of the suggestion of error which questions the propriety of remanding the case to the lower court is treated as a motion to correct judgment and the same is sustained and judgment final will be here entered in accordance with the original opinion.

Suggestion of error overruled; motion to correct judgment sustained.

All Justices concur except *Kyle, J.,* who took no part.