Martin *v.* Texas Gulf Producing Co., et al.

No. 39535 April 11, 1955 79 So. 2d 270

*Green, Green & Cheney,* Jackson, for appellant.

*Bernard Chill,* Jackson, for appellee, Texas Gulf Producing Company.

*Wells, Thomas & Wells,* Jackson; *W. B. Wagner, Murray Christian,* Houston, Texas, for appellee, The Superior Oil Company.

*Robert O. Koch, Clyde E. Willbern,* Houston, Texas; *Wells, Thomas & Wells,* Jackson, for appellee, Tide Water Associated Oil Company; *Earl A. Brown, Charles A. Wallace,* Dallas, Texas; *Brunini, Everett, Grantham & Quin,* Jackson, for appellee, Magnolia Petroleum Company; *J. W. Timmins, Martin A. Row, Leo J. Hoffman,* Dallas, Texas; *Walter L. Shows,* Jackson; *Armstrong & Hoffman,* Hazlehurst, for appellee, Sun Oil Company;

*Joe A. Thompson, M. M. Roberts,* Hattiesburg, for appellee, Humble Oil & Refining Company.

*Hedgepeth, Ewing & Hedgepeth, Satterfield, Shell, Williams & Buford, Harvey L. Strayhan* and *James A. Boone,* Jackson; *Archie D. Gray,* Pittsburgh, Pennsylvania, for Gulf Refining Company, Amicus Curiae.

884

ROBERDS, P. J.

On November 15, 1939, J. E. Thrift, Jr., acquired an oil and gas lease on certain lands located in Jefferson Davis County, Mississippi. The lease was for a primary term of ten years, to be annually renewed by rental payments or the drilling of a gas or oil well on the leased premises. Title to this lease became vested in Texas Gulf Producing Company. Default was made in annual rental payments, but the lands covered by the lease were included within and became a part of Units 7 and 34 in the Gwinville Gas Field. No well was sunk on the lands described in the lease but producing gas wells were drilled upon lands within said units.

Geraldine B. Martin acquired an undivided mineral interest in the lands in question subject to the Thrift lease.

In her bill she set forth the foregoing facts and alleged that the Thrift-Texas lease had terminated because of failure to make the annual renewal payments and because no well had been drilled upon the premises described in the lease, and also raised certain constitutional questions directed to the legality of the oil and gas laws in this State and their administration, and asked for an accounting. A general demurrer on the ground that the bill stated no cause of action was sustained in the lower court, and complainant refusing to further plead, the bill was dismissed, from which action Mrs. Martin appeals to this Court.

The bill asserting the stated grounds for relief was filed in August 1950, before decisions in the cases of Superior Oil Company v. Beery, 216 Miss. 664, 63 So. 2d 115, 64 So. 2d 357; Superior Oil Company v. Foote, 216 Miss. 728, 63 So. 2d 137, 64 So. 2d 355; Humble Oil & Refining Company v. Hutchins, 217 Miss. 636, 64 So. 2d 733, 65 So. 2d 824; and Texas Gulf Producing Company v. Griffith, 218 Miss. 109, 65 So. 2d 447, 834, which cases upheld the constitutionality of the oil and gas leg-

islative acts, and also adopted the rule that the drilling of a well on a duly constituted unit, embodying into the unit the particular land described in the lease of complainant, although the well was not located on the land described in the lease, had the effect to renew and keep alive the lease on the particular land just as though the well had been located on the particular leased land. Therefore, the contentions above set out are not well taken.

 ██ Mrs. Martin also urges the unique contention that gas in the Gwinville Field is being produced between 7,100 and 7,800 feet subsea level, and that the Thrift-Texas lease has terminated because of failure to drill a well through the subsurface beneath the 7,800 foot depth. We cannot agree to that contention. The lease provides for termination on failure to make annual payment or "If operations for drillings are not commenced on said land * * * " within the time specified. There is no contractual obligation to drill to any named strata or depth. The obligation is to locate a well on the "land" described in the lease. That was done within the meaning of the law as announced in the foregoing cases when the well was brought in on the unit of which the leased land was a part.

This Court knows, from the many cases which have come to it involving gas leases, their extension, termination, etc., and the rights to share in production under them, that the gas is being produced in the Gwinville Field from the depth and strata as shown in this case, yet we have held that the leases have been perpetuated by producing wells from that strata on the leased premises or from the unit of which the leased lands were a part, and production apportionment has been made upon land surface acreage. Cases. supra, especially Texas Gulf Producing Company v. Griffith. We think the contention necessarily has been refuted by the wording of

the statute and of the leases, the actions of the Oil and Gas Board and the adjudications by this Court.
Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.