THE SUPERIOR OIL COMPANY *v.* MAGEE, et al.

No. 40016          May 7, 1956          87 So. 2d 280

*Wells, Thomas & Wells,* Jackson; *Murray Christian,*
*W. B. Wagner,* Houston, Texas, for appellant.

*Hall & Callender,* Columbia; *Livingston & Livingston,* Prentiss, for appellees.

ETHRIDGE, J.

This is another and perhaps the final case involving gas units in the Gwinville Field in Jefferson Davis County. The controversy is over the production of natural gas from a tract of 4.65 acres in Unit No. 50. Appellee Mabelle Griffith Magee was the owner of the land when on May 14, 1940, she and her husband, the other appellee, complainants below, executed an oil, gas and mineral lease on this land, along with other lands, to John D. Gholson, who later assigned it to Superior Oil

Company. Appellees brought this suit in the Chancery Court of Jefferson Davis County on May 27, 1950, seeking to cancel the lease on the ground that its 10-year primary term had expired on May 14, 1950, and that the lease had therefore terminated. The bill also sought to obtain a judgment against appellant for the full value of the production from the 4.65 acres in Unit 50, less its proportionate share of the cost of production.

The gas well in Unit 50 was completed as a producing well on December 30, 1949. The suit was first filed in May 1950, so it was brought prior to the decisions of this Court in 1952 and 1953 interpreting the statutes and regulations of the State Oil and Gas Board with reference to the establishment of drilling units. Superior Oil Company v. Foote, 214 Miss. 857, 59 So. 2d 85, 37 A. L. R. 2d 415 (1952); Superior Oil Company v. Beery, 216 Miss. 664, 63 So. 2d 115, 64 So. 2d 357 (1953); Humble Oil and Refining Company v. Hutchins, 217 Miss. 636, 64 So. 2d 773 (1953). Although the case was not tried until 1954 and a final decree was rendered on March 23, 1955, the chancery court nevertheless sustained complainants' contentions, and held that Unit No. 50 was not validly created, and the lease to appellant had expired as to the 4.65 acres in Unit 50.

■■ ■ The issues raised by the bill of complaint have long since been foreclosed by the decisions of this Court in 1952 and 1953 dealing with the formation of integrated units for production of gas and oil. The trial court was in error in rendering its decree as to Unit 50. Appellees' main contention is that this unit was attempted to be established at a time when Chapter 256, Miss. Laws of 1948, was in effect; that under Section 10(a) of Chapter 256, the State Oil and Gas Board was given power to require integration of drilling units "of forty acres in area or less, but as to no drilling unit of greater area . . ." Since the various acts relative to the creation of Unit No. 50 occurred between the time Chapter 256,

Laws of 1948, became effective, and the effective date of Chapter 220, Laws of 1950, which was April 18, 1950, appellees contend that the unit in question was formed in violation of the statute, and that therefore the chancery court was correct in holding that it was an invalid unit which did not have the effect of extending the primary term of the lease by production from lands on another part of the alleged unit. Where a unit has been properly established, it is settled that production from any of the land in the unit extends the leases upon all lands in the unit insofar as such leases cover the unitized tracts. Superior Oil Company v. Beery, supra.

Appellees' position on this point was considered and decided against them in Humble Oil and Refining Company v. Hutchins, 217 Miss. 636, 644, 64 So. 2d 773 (1953). Unit No. 52 in the Gwinville Field was established almost simultaneously with Unit No. 50 here in controversy. The dates are substantially the same with reference to the execution by lessees of operating agreements, applications for permits to drill, completion of the wells, and expiration of primary term of the lease, the latter dates in both instances being after the effective dates of Chapter 220, Laws of 1950, which contained no restriction upon the acreage of units created by administrative orders of the State Oil and Gas Board under Section 10. In both cases the production in the unit was from lands other than the tracts in controversy. And in both the procedures in creating the units were in accord with rules of the State Oil and Gas Board of October 29, 1948, with reference to spacing and the requirement that a gas unit must be located upon 320 contiguous surface acres. In the Hutchins case it was held that Unit No. 52 was validly created and established as a drilling unit by the various actions of the lessees in locating and fixing the unit on the ground, obtaining permits to drill, filing of plats, well completion reports, and allowable production orders of the Board, under

the authority of Superior Oil Company v. Foote and Superior Oil Company v. Beery. The Court then said: "In the case at bar, the various steps leading up to the establishment of the units took place after the spacing rules of October 29, 1948, were adopted under the authority of Chap. 256, Laws of 1948. But these rules were substantially the same as those of August 11, 1947, and September 11, 1947. It follows, therefore, that under the facts of this case Unit No. 52 and Unit No. 55 were legally established. In fact, this Court has heretofore so held in the case of Unit No. 55. Hutchins v. Humble Oil & Refining Co., Miss., 59 So. 2d 103. If it be said that the act of 1948 expressly denied to the board the power to compel integration of units exceeding forty acres in area, the answer is that this Court has already held that, nevertheless, a 320 acre unit could be established, and that, the unit having been established, the result was the same, when there was production from such a 320 acre unit, as if the board had possessed and exercised the power to force integration."

In other words, under the 1948 rules a lessee was required by the Board and statutes to establish a gas drilling unit of 320 acres, and when the unit was established there was a de facto unitization of all production from the unit. The result under Superior Oil Company v. Beery, supra, was that production from such a unit had the same effect as if the Board "had possessed and exercised the power to force integration." Section 9(b) of the 1948 law required the Board to establish drilling units for each pool, and Section 4(1) required that a drilling unit must contain the maximum area which could be drained efficiently by one well. The manifest inconsistency between these several provisions and Section 10(a) resulted in the Hutchins case in a holding that a 320-acre unit was established under the 1948 law by the acts of lessess and the Board, and that the result of such establishment was the same as if the Board had

possessed and exercised the power to force integration. The establishment of drilling units of itself pooled all of the interests in the unit, it was held in Hutchins, without the necessity of following the alternative administrative procedure provided for in Section 10(a) of the 1948 Act. So Humble Oil and Refining Company v. Hutchins considered and passed upon the exact issue raised by appellees in this case, and decided it contrary to their contention. Moreover, this issue was thoroughly considered prior to the decision in Hutchins, as is indicated by the majority opinion of Justice Lotterhos and the specially concurring opinion of Justice Hall.

The field rules for the Gwinville Field dated October 29, 1948, found that the efficient drainage area of each gas well was 320 surface contiguous acres, and provided that a gas well must be located on a unit "consisting of not less than 320 surface contiguous acres." Unit No. 50 was originally established in 1949 as containing 320 acres. Production allowables were entered for it from January 1950 through March 1951 on the basis of 320 acres, and thereafter, beginning with April 1951 through November 1954, the date of the trial, Unit 50 was assigned an allowable production from 315.9 acres, which is the true acreage in the unit. Appellees contend that, since appellant obtained no exception to the spacing rules, which required that a unit consist of 320 surface contiguous acres, Unit No. 50 was invalidly created, and being illegal there could be no integration of the several tracts within it. No fraud or bad faith on the part of appellant in the establishment of the unit is shown. The shortage from the norm is 4.1 acres. This same issue but with a somewhat larger shortage of acres in a unit was decided adversely to appellees contentions in Green v. Superior Oil Company, 59 So. 2d 100, 102-103 (Miss. 1952), where it was said: "The wells on Units 9 and 10 were completed on November 2 and December 4, 1947, respectively. However, it subsequently developed upon

a new survey that Units 9 and 10 contained only about 297 acres each. Appellee Humble Oil and Refining Company communicated this fact to the Board in November, 1948. It appears that the two sections involved were sections which were short in acreage. Although the size of the two units was somewhat less than that stated in the rules, the Board both before and after it obtained knowledge of this fact approved by its various actions and orders these units. Appellants make no claim and there is no evidence that appellees acted in bad faith or fraudulently in establishing the two units. We think that the Board was amply justified in its pooling order of June 23, 1950, in adjudicating that the units had been properly established. The effect vel non of the shortage in acreage upon production allowables is an issue not involved here and not relevant to the question of establishment of the units. The Board was warranted in finding substantial compliance with its rules.''

In Superior Oil Company v. Griffith, 214 Miss. 891, 59 So. 2d 104 (1952), on suggestion of error in 214 Miss. 900, 60 So. 2d 505, there was involved an order of the State Oil and Gas Board of September 20, 1950, directing integration of Gwinville gas Unit No. 50. This was after the effective date of Section 10 of the Act, as amended by Chapter 220, Laws of 1950. It was held that, because of a mistake in the description as used in the notice of hearing and integration order, which included twenty acres not contiguous to the other lands in the unit and which were part of another unit, the integration order of the board was invalid as to Unit 50. The case was remanded ''without prejudice for such further proceedings before the State Oil and Gas Board that any person interested may desire to institute for obtaining a valid order of integration of the lands and leases in said suit . . .'' Apparently no further proceedings were taken to obtain an integration order of the Board under Section 10, as amended by Chapter 220, Laws of 1950.

■■ ■ Appellees contend that this decision on suggestion of error in the Griffith case, with reference to the Board's integration order of September 20, 1950, is res judicata on the issue as to whether Unit 50 was validly established. We cannot agree. The decision in Griffith was confined to the question of the validity of the Board's integration order under Section 10. It did not deal with whether the unit had precedently been established in fact under the authority of the Foote, Berry and Hutchins cases. The Board's order of September 20, 1950, was held invalid because it contained a misdescription of twenty acres.

■■ ■ However, the present case is not concerned with that order. The issue now is whether the unit was established in fact and on the ground by the following actions occurring in 1949: Designation of Unit 50 by lessees, execution of operating agreement by lessees, application to drill well on Unit 50, issuance by Board of permit to drill well on Unit 50, completion of well on December 30, 1949; and in January 1950, the filing with the Board of a plat of Unit 50, certificate of pooling by lessees, filing of well completion report; and production allowables granted Unit 50 by the Board in February and March of 1950, and subsequently through November 1954, the date of the trial. All of these actions of the lessees and the Board were done under a proper description of the lands in the unit. See Superior Oil Company v. Griffith, 214 Miss. 904. Their effect was to establish a de facto unit several months prior to the effective date of the 1950 amendments and the Board's subsequent order of September 20, 1950. Superior Oil Company v. Foote; Superior Oil Company v. Berry; and Humble Oil & Refining Company v. Hutchins, supra.

Moreover, the decision in the Griffith case remanded that cause without prejudice for further proceedings before the Board. It did not consider or decide any question with reference to actions of the lessees and the

Board under the statutes and rules, which occurred prior to the petition for an integration order under Section 10, and the order of September 20, 1950. In view of the nature of the remand, it is manifest that no final determination of the issues here involved was intended or contemplated by the Griffith decision.

For the foregoing reasons, the final decree of the chancery court insofar as it applies to Unit No. 50 (and only from that was the appeal taken) is reversed and judgment rendered here for appellant, Superior Oil Company, adjudicating that Unit No. 50 was validly established and had the effect of continuing appellees' lease to Superior on appellees' 4.65 acres within that unit while production is had from a well on the unit. The judgment of this Court will also provide that appellees recover from appellant a sum of money representing their proportionate royalty interest under their lease to Superior from the production which has accrued from Unit No. 50 up to the date of the rendition of this judgment, less taxes paid thereon.

Reversed and judgment rendered.

*McGehee, C. J.,* and *Roberds, Kyle, Holmes, Arrington* and *Gillespie, JJ.,* concur. Hall, J. took no part. Lee, J. dissents.

Lee, J., dissenting.

This is the third time that Unit No. 50 in the Gwinville gas field has come under review by this Court. The first occasion was in the case styled Superior Oil Co. v. Griffith, 214 Miss. 891, 59 So. 2d 104. The Magees were the "et al" in that case. In the proceeding, the Oil Company petitioned the State Oil & Gas Board, under Chapter 220, Laws of 1950, for the establishment of Unit 50 in order to integrate the entire acreage therein, and thereby effect forced pooling of interests and the extension of the original term of the leases. It did not proceed under Chapter 256, Laws of 1948, for the evi-

dent reason that, under Section 10 thereof, forced integration and pooling of more than 40 acres was forbidden.

The Unit, as sought to be approved, contained, according to the description, 320 acres. These lands had been described on the plat which was filed with and approved by the Board, and in the operative agreements, and in the recorded designation of the Unit. Besides, the Board had assigned allowables for each month since February 1950, shortly after the well's completion. In other words, the Oil Company offered proof before the Board as to all acts and proceedings theretofore had in connection with the unit.

The original leases did not contain pooling agreements. The appellees therein were willing for their lands to be included in the Unit, but only on the condition that the same would be treated as unleased. The primary terms had actually expired when the order of integration was finally adopted. Thus the forced pooling of interests and the extension of the original term of the leases became the heart of the controversy.

On appeal, the circuit court reversed the order of the Board. However, on appeal here, this Court upheld and reinstated the original order of the Board. The opinion stated however that this was done "without adjudicating the effect of such order upon the nature and extent of the rights of the respective owners". It also took note of an error of 20 acres in the description of the Unit, and withheld approval as to that part of the order.

After the original decision, a suggestion of error was filed. In passing thereon, 60 So. 2d 505, the opinion declared that Unit 50 was invalid because the 20 acres in question was non-contiguous; that it was necessary for the Unit to contain 320 acres, unless an exception was granted; and that the conditions for an exception did not exist. Hence this Court would not correct the order so as to include acreage different from that which was

approved by the Board, as its only authority was to affirm or reverse for further proceedings. Besides a discrepancy had been called to the attention of the Board at the time of the hearing, and nothing came of it.

In other words, the records showed that all of the steps which had been taken in the attempt to form and establish Unit 50 (and which are now said by the majority opinion to have constituted a de facto unit) were adduced before the Board, were considered by the circuit court on appeal, and, in turn, came to the attention of this Court. In the opinion, invalidating the unit, it was said: ''* * we withdraw our former opinion to the extent that the same reverses the order of the circuit court wherein that court had reversed the order of the State Oil and Gas Board as to the integration order of Unit 50, and we now affirm the action of the circuit court as to said Unit 50 and remand the cause without prejudice for such further proceedings before the State Oil and Gas Board that any person interested may desire to institute for obtaining a valid order of integration of the lands and leases in said unit, it being our opinion that the appellees, or at least the appellee, Mrs. Mabell G. Magee, have a sufficient interest in having Unit 50 legally integrated as to be entitled to raise this issue of discrepancy, even though none of the appellees own any interest in either of the 20 acres in regard to which the error occurred.''

Thus the Court invalidated Unit 50 and remanded the cause to the Board for such proceedings as might be taken, with the Magees as necessary parties, in order validly to integrate the lands in the Unit. The appellant did not follow up with additional proceedings before the Board. It did nothing further before that tribunal. So when the present cause was tried in the chancery Court, the previous opinion of this Court, supra, holding Unit 50 to be invalid, was staring the chancellor in the face. He heard the same subject matter, which

was presented by the same parties as in the former cause in this Court. Since this Court had said that Unit 50 was invalid, undoubtedly he was of the opinion that he should follow a solemn pronouncement of this Court. Thus he held that the Unit had been invalidly created as to the appellees, and, in my opinion, rightfully awarded relief.

The majority opinion holds that, owing to the nature of the remand, the Court, in its opinion on suggestion of error, made no final determination of the matter. But it is inescapable that this Court adjudicated that Unit 50 was invalid. Since the parties and the real controversy were the same in both instances, I think that res judicata ought to be applied. Tobias v. Tobias, (Miss.) 83 So. 2d 638, and authorities there cited.

Being of the above opinion, I do not think that Humble Oil & Refining Co. v. Hutchins, 217 Miss. 636, 64 So. 2d 733, is applicable. Consequently, I would affirm the decree of the trial court.