**TRI M PETROLEUM COMPANY, William E. Hathorn, R.C. Speights, Jr., and Thomas G. Bass, Plaintiffs-Appellants,**

v.

**GETTY OIL COMPANY, Defendant-Appellee.**

**C.R. RIDGWAY, Jr. and First National Bank of Jackson as Co-Trustees of the W.S. Ridgway Trust, Plaintiffs-Appellants,**

v.

**SHELL OIL COMPANY, Defendant-Appellee.**

Nos. 85–4261, 85–4363.

United States Court of Appeals, Fifth Circuit.

June 25, 1986.

---

Glenn Gates Taylor, Harry E. Neblett, Jr., Jackson, Miss., for plaintiffs-appellants in No. 85–4363.

Paul H. Stephenson, III, P.N. Harkins, III, Jackson, Miss., for defendant-appellee in No. 85–4363.

Dale H. McKibben, Donald Clark, Jr., Elias Lake Tolbert, Jackson, Miss., for plaintiffs-appellants in No. 85–4261.

Scott P. Hemleben, Jack W. Brand, Jackson, Miss., for defendant-appellee in No. 85–4261.

Before THORNBERRY, POLITZ, and RANDALL, Circuit Judges.

POLITZ, Circuit Judge:

In these two Mississippi diversity jurisdiction cases, consolidated for purposes of oral argument and disposition, plaintiffs-lessors appeal adverse summary judgments in suits to cancel oil and gas leases for nonproduction. Both Mississippi federal trial judges reached the same conclusion, ruling that the leases continued in force because of forced-pooling orders of the State Oil and Gas Board of Mississippi (the Board) and subsequent drilling within the pooled unit. Concluding that the district courts correctly anticipated and applied Mississippi law, we affirm both judgments.

## BACKGROUND

### Tri M v. Getty, No. 85–4261

The material facts are not in dispute. In October 1971 Skelly Oil Company (later Getty Oil Company), acquired two oil, gas, and mineral (OGM) leases from Ora Barnes, covering land in Jefferson Davis County, Mississippi. Both leases had ten-year primary terms and would continue for "as long thereafter as oil, gas, or other mineral is produced from said land or acreage pooled therewith." Both leases contained standard clauses on pooling and drilling operations, the latter providing for continuation of the lease, despite lack of production, if drilling or reworking operations were underway at expiration of the primary term. The leases were due to expire in October 1981 unless continued by diligent drilling operations resulting in the production of oil, gas, or other minerals.

Several months before expiration of the primary term, Tri M Petroleum Company and the individual plaintiffs (hereafter "Tri M") acquired "top" leases on the lands covered by the Getty leases. In June 1981, System Fuels, Inc., seeking to develop the area but having been unsuccessful in securing approval of the various mineral interest owners, petitioned the Board for a unitization order and authority to drill a well in a 640-acre unit which included the acreage covered by the Getty leases.

On August 20, 1981, the Board force-pooled the 640-acre unit and designated System Fuels as the operator of the proposed well. Getty declined to farm out its acreage to System Fuels but initially agreed to participate in the drilling costs. Getty later refused to participate when System Fuels insisted on an agreement which provided that if the well was completed as an oil well, the size of the unit would be reduced, excluding Getty's acreage and precluding its entitlement to any production, despite its having advanced a portion of the drilling costs. When System Fuels refused to delete that clause, Getty declined to sign the agreement. System Fuels commenced drilling operations on August 25, 1981 and completed the well as

a producing gas well on January 5, 1982. Getty's interest was carried to payout.

Tri M filed suit seeking cancellation of the Getty leases for nonproduction. Getty countered that the Board's forced-pooling order superseded the lease provisions and that drilling by the designated operator continued the leases in effect. The district court agreed and granted Getty's motion for summary judgment. Plaintiffs appealed.

*Ridgway v. Shell Oil,* No. 85–4363

On May 2, 1974, the Ridgway plaintiffs executed an OGM lease with Shell Oil Company covering property in Rankin County, Mississippi.[1] The lease had a five-year primary term with standard operation and production continuation clauses.

A dispute between Shell and Pursue Energy Corporation triggered this litigation. Both companies wished to drill in the same area. A voluntary accord could not be reached and both filed petitions with the Board requesting approval of a drilling unit and forced integration of all interests within the unit.

Exercising its authority under Miss.Code Ann. § 53–3–7 (1972) (prior to its amendment by Laws 1984, ch. 511, § 1; *see* Laws 1984, ch. 511, § 2), the Board denied Shell's application and granted Pursue's stating in its order:

> ... All separately owned interests ... are hereby pooled and integrated, and the persons owning the drilling rights therein and the right to share in production therefrom are hereby required to integrate their interests and said interests are hereby integrated as a gas drilling unit for the drilling, production, development and operation of said lands as to the oil, gas and mineral rights therein.

The Ridgway property was located within the unit but was not the drilling site.

Pursue finished the drilling operation and completed a well capable of production but shut it in. Shell timely tendered shut-in royalty payments until the well was put into production. Plaintiffs instituted this action to cancel the lease, whose primary term had expired, alleging that no drilling operation by Shell had taken place. Additionally, plaintiffs contended that Shell failed to file a declaration of pooling at the end of the primary term and unreasonably delayed royalty payments. The district court found that the lease was extended by the forced-pooling order and Pursue's drilling thereunder. It found no merit in the other allegations and granted Shell's motion for summary judgment. Plaintiffs appealed.

## ANALYSIS

■ We consolidated these cases on appeal because both raise the same issue: Whether the issuance of a forced-pooling or unitization order by the Board, pursuant to Miss.Code Ann. § 53–3–7 (1972), and drilling thereunder within the unit continue OGM leases on all lands located inside the unit. The controlling facts are common in both suits. Acreage under lease to Getty and Shell was included in a state-ordered pooling unit. Drilling occurred within the unit but not on the lands leased to Getty and Shell. Both refused to farm out their interests. Neither advanced drilling costs but simply "rode down the well."

Both sets of plaintiffs contend that cancellation of their leases is in order because the leases require the lessees to commence operation within the primary term, neither lessee did, and the drilling done by the Board-designated operators could not inure to the lessees' advantage. They contend that the cited Mississippi statute was not intended to affect lease obligations undertaken by the lessees.

The lessees counter that the statute-based orders of the Board preempt the provisions of the leases, and that they were foreclosed from drilling after the units were established and an operator was des-

---

1.  Shell subsequently assigned its interest to 3300 Corporation. For convenience all references herein shall be to Shell.

ignated by the Board. They contend that the forced-unitization order relieved them of their personal obligation to take affirmative action by drilling and production operations in order to continue the leases beyond the primary term.

In both cases, the trial judges, schooled and skilled in the law of Mississippi, to which we duly defer, relied on the current compulsory pooling statute, its forerunners, and cases decided thereunder. The Mississippi Supreme Court had repeatedly held: "Where a unit has been properly established, it is settled that production from any of the land in the unit extends the leases upon all lands in the unit insofar as such leases cover the unitized tracts." *Superior Oil Co. v. Magee*, 227 Miss. 868, 87 So.2d 280, 281 (1956); *Superior Oil Co. v. Berry*, 216 Miss. 664, 63 So.2d 115, *suggestion of error overruled*, 216 Miss. 664, 64 So.2d 357 (1953). This rationale was overlaid to the forced pooling, drilling, and factual situation presented in the cases at bar.

The controlling statute, Miss.Code Ann. § 53-3-7 (1972) (applicable to these cases under Laws 1984, ch. 511, § 2), provided in pertinent part:

(a) When two or more separately owned tracts of land are embraced within an established drilling unit, the person owning the drilling rights therein and the rights to share in the production therefrom may validly agree to integrate their interests and to develop their lands as a drilling unit. Where, however, such persons have not agreed to integrate their interests, the board may, for the prevention of waste or to avoid the drilling of unnecessary wells require such persons to integrate their interests and to develop their lands as a drilling unit. All orders requiring such pooling shall be made after notice and hearing, and shall be upon terms and conditions that are just and reasonable, and will afford to the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense.

The portion of the production allocated to the owner of each tract included in a drilling unit formed by a pooling order shall, when produced, be considered as if it had been produced from such tract by a well drilled thereon....

Our attention is invited to no case, and our independent research has found none, in which the Mississippi Supreme Court has applied § 53-3-7 to a drilling scenario as presented in the cases at bar. Nonetheless, we find adequate guidance from analogous Mississippi authorities.

At the outset, we note the not-unusual requirement that lease obligations in Mississippi are "construed subject to the applicable statutes for the conservation of oil and gas and the orders, rules, and regulations of the [State Oil and Gas] Board promulgated pursuant to the statutes." *Frost v. Gulf Oil Corp.*, 238 Miss. 775, 119 So.2d 759, 762 (1960). The Mississippi Supreme Court has upheld the Board's orders and regulations in a variety of settings. *See, e.g., Barnwell, Inc. v. Sun Oil Co.*, 249 Miss. 398, 162 So.2d 635 (1964) (Board allocated and apportioned production); *Frost* (Board rules supplemented statute); *Corley v. Mississippi State Oil & Gas Board*, 234 Miss. 199, 105 So.2d 633 (1958) (Board perpetuated 40-acre units and created field-wide unit); *Hassie Hunt Trust v. Procter*, 215 Miss. 84, 60 So.2d 551 (1952) (Board designated drilling units); *Green v. Superior Oil Co.*, 59 So.2d 100 (Miss.1952) (Board created 320-acre units).

We find in the cases predating the applicable statute ample indication that the Mississippi Supreme Court would approve the continuance of the Getty and Shell leases in the instant forced-pool setting. *See, e.g., Humble Oil & Refining Co. v. Hutchins*, 217 Miss. 636, 64 So.2d 733, *suggestion of error overruled*, 217 Miss. 636, 65 So.2d 824 (1953); *Superior Oil Co. v. Berry; Superior Oil Co. v. Foote*, 216 Miss. 728, 63 So.2d 137, *suggestion of error overruled*, 216 Miss. 728, 64 So.2d 355 (1953). The *Berry* court in particular indicated that the involuntary pooling order altered the lessee's rights and concomitant obligations and

would extend the leases on lands placed within the ordered unit.

Our reading of the foregoing Mississippi precedents inexorably leads us to the conclusion that the Mississippi Supreme Court would find that the Getty and Shell leases were extended as a consequence of the Board's unitization order and the subsequent drilling by the designated operator. In so deciding, we anticipate that Mississippi would reach the same conclusion as other oil-and-gas-sensitive jurisdictions. In Louisiana and Alabama it is well-established that drilling on any property within the involuntarily-pooled unit constitutes drilling on all property therein, just as production from a well located in the unit is taken as production from all property within the unit. *Everett v. Phillips Petroleum Co.*, 218 La. 835, 51 So.2d 87 (1950); *Matthews v. Goodrich Oil Co.*, 471 So.2d 938 (La.App.), *writ denied*, 475 So.2d 1105 (La. 1985). *See also Sheffield v. Exxon Corp.*, 424 So.2d 1297 (Ala.1982).

Plaintiffs-appellants' reliance on the decision in *Wagner v. Mounger*, 253 Miss. 83, 175 So.2d 145 (1965), is misplaced. *Wagner* did not involve a forced-unitization order designating the only party who could drill a well. That decision is obviously not controlling, nor does it furnish meaningful guidance to our present quest.

■ Two further issues are presented in the *Ridgway v. Shell* appeal. First, was Shell obliged to file a pooling declaration, and did its failure to do so constitute a breach sufficient for cancellation of the lease? The district court concluded that the filing was unnecessary. We agree. The lease provides for voluntary pooling, in which event Shell would be required to file an appropriate notice of the pooling agreement. This was not a voluntary pooling agreement and Pursue, the designated operator in the forced-pooling arrangement, filed a copy of the Board's order in the office of the Chancery Clerk of Rankin County. Since it gave notice, this was a sufficient filing as contemplated by the lease, and Shell was not required to repeat that formality.

■ Second, did the lease terminate because Shell was late in making royalty payments? Shell promptly paid "shut-in" royalties when the pooled well was temporarily shut-in. As to the other payments, Shell maintains that any delay was caused by Ridgway. While this precise issue has not been resolved under Mississippi law, we noted in *McLaurin v. Shell Western E. & P., Inc.*, 778 F.2d 235 (5th Cir.1985), that Mississippi generally disfavors forfeitures. We there interpreted Mississippi law to reject cancellation of an oil and gas lease as an available remedy for breach of an express covenant to pay royalty.

On this issue, plaintiffs' reliance on Louisiana law is not well-founded. Under Louisiana law, cancellation is a remedy because royalty payments are considered *rentals. See Melancon v. Texas Co.*, 230 La. 593, 89 So.2d 135, 142 (1956). The rule in most jurisdictions is that cancellation of a lease is not available for late payment absent an express forfeiture clause in the lease. *McLaurin*, 778 F.2d at 236–37. The Ridgway-Shell lease did not contain an express forfeiture clause. Applying the majority rule, the district court was of the opinion that absent such a lease clause, the Mississippi Supreme Court would hold that Shell's lease should not be cancelled for late payment of the royalty. We are likewise persuaded.

For the foregoing reasons, the judgment of the district court, in each of the consolidated cases, is

AFFIRMED.